**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHILIP CAMACHO, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| AMERICAN EXPRESS COMPANY, | |
| Defendant. | |

Plaintiff Philip Camacho ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action lawsuit brought on behalf of all California residents who applied for a credit card on Defendant American Express Company's ("Defendant" or "AmEx") website americanexpress.com (the "Website") and had their application rejected.

2.     Defendant aided, employed, agreed, and conspired with Facebook to intercept communications sent and received by Plaintiff and Class Members, including communications containing sensitive financial information. Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100

members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

4.      This Court has personal jurisdiction over Defendant because Defendant's headquarters are in this District.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

**<u>PARTIES</u>**

6.      Plaintiff Camacho is, and has been at all relevant times, a resident of Chatsworth, California and has an intent to remain there, and is therefore a domiciliary of California. Plaintiff has an active Facebook account that he has maintained for numerous years.  Pursuant to the systematic process described herein, Defendant assisted Meta with intercepting Plaintiff's communications on the Website, including those that contained personally identifiable information ("PII") and sensitive financial information.  Specifically, in or about March 2023, Plaintiff applied for an American Express credit card on americanexpress.com.  As part of the application on the Website, Plaintiff provided Defendant with multiple pieces of sensitive information, including but not limited to his social security number, his total annual income and his income source.  As described below, Defendant used the Facebook Tracking Pixel on the Website to send all of this information to Meta without Plaintiff's knowledge, consent, or express written authorization.  By failing to receive the requisite consent, Defendant breached its duties of confidentiality and unlawfully disclosed Plaintiff's personally identifiable information and protected financial information.

7.    Defendant American Express Company is a New York corporation with its principal place of business located in New York, New York.  Defendant develops, owns, and operates americanexpress.com.

## FACTUAL ALLEGATIONS

### I.    The California Invasion of Privacy Act

8.    The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens.  The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Cal. Penal Code § 630.

9.    The California Supreme Court has repeatedly stated an "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call."  *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added)

10.    Further, as the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Id.*, 38 Cal. 3d at 360-61 (emphasis added; internal citations omitted).

11.     As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any . . . communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use . . . any information so obtained."

12.     CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

13.     As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

14.     A "confidential communication" for the purposes of CIPA § 632 is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal Code § 632(c).

15.     Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation. Cal. Penal Code § 637.2(a)(1).

## II.     The Facebook Tracking Pixel

16.     Facebook is the largest social networking site on the planet, touting 2.9 billion monthly active users. Facebook describes itself as a "real identity platform," meaning users are allowed only one account and must share "the name they go by in everyday life." To that end,

when creating an account, users must provide their first and last name, along with their birthday and gender.

17.     Facebook generates revenue by selling advertising space on its website.

18.     Facebook sells advertising space by highlighting its ability to target users. Facebook can target users so effectively because it surveils user activity both on and off its site. This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."   Facebook compiles this information into a generalized dataset called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertisements.

19.     Advertisers can also build "Custom Audiences."   Custom Audiences enable advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website."  Advertisers can use a Custom Audience to target existing customers directly, or they can use it to build a "Lookalike Audiences," which "leverages information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."   Unlike Core Audiences, Custom Audiences require an advertiser to supply the underlying data to Facebook.  They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools," which collect and transmit the data automatically.  One such Business Tool is the Facebook Tracking Pixel.

20.     The Facebook Tracking Pixel is a piece of code that advertisers, like Defendant, can integrate into their website.  Once activated, the Facebook Tracking Pixel "tracks the people and type of actions they take."   When the Facebook Tracking Pixel captures an action, it sends a

record to Facebook.  Once this record is received, Facebook processes it, analyzes it, and assimilates it into datasets like the Core Audiences and Custom Audiences.

21.     The Facebook Tracking Pixel tracks numerous types of action—or, as Facebook calls it, "events"—that users take on websites, including the website's metadata, along with what pages a visitor views and what buttons a visitor clicks.  Events tracked through the Pixel include URLs visited and text typed into text boxes, among many other items.

### III.     Use of the Facebook Tracking Pixel on Defendant's Website

22.     Defendant provides applications for its various credit cards on its Website.  The Facebook Tracking Pixel is installed on each webpage used for these applications.

23.     These applications require applicants to provide their names, dates of birth, email addresses, phone numbers and home addresses.  Applicants are also required to provide their social security numbers and sensitive financial information such as their total annual income and the source of that income:

**AMERICAN EXPRESS**

SOCIAL SECURITY NUMBER

___-__-_____

If you do not have an SSN, you can enter your ITIN (Individual Taxpayer Identification Number) here instead.

**New to the U.S., but have an American Express account or foreign credit history in another country? (Optional)**

Allow us to consider your foreign American Express account history or foreign credit history from select countries so that we can better evaluate your application.

Show Details

TOTAL ANNUAL INCOME

$

Include all income available to you. If under age 21, include only your own income. Income includes wages, retirement income, investments, rental properties, etc. Alimony, child support, or separate maintenance need not be revealed if you do not wish to rely upon it.

NON-TAXABLE ANNUAL INCOME (OPTIONAL)

$

This field only applies if a portion of your income is non-taxable and is optional. Include here any annual income that is exempt from federal income tax. This may include social security, child support, public assistance, disability, workers compensation, and military allowances. If you're under 21, please include your personal income only.

INCOME SOURCE

Choose One ⌄

24.     The Facebook Tracking Pixel on these application pages track all of the information that applicants enter and send that data to Facebook without applicant's consent or knowledge.  In fact, the Meta Business Tools Terms specifically require Pixel users like Defendant to "represent and warrant" that they will not share data with Meta that includes

7

"financial information or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)."

    25.    In addition, americanexpress.com contains the code for at least nine different Facebook cookies:

| Name | Value | Domain |
|---|---|---|
| c_user | 679395441 | .facebook.com |
| datr | _5noZTFn-gKbid4znYt_SgzT | .facebook.com |
| dbln | %7B%22679395441%22%3A%22ozIZZg1r%22%7D | .facebook.com |
| fr | 1SEqTmgmWV3niLbPP.AWXWrnKuerMTPYbk7p58iYd9uFQ.Bl_... | .facebook.com |
| ps_n | 0 | .facebook.com |
| sb | BproZetQhVIgMjxOLpYdCwof | .facebook.com |
| usida | eyJ2ZXIiOjEslmlkIjoiQXNhcmhrNTFzdjBhbWEiLCJ0aW1lIjoxNz... | .facebook.com |
| wd | 1920x949 | .facebook.com |
| xs | 11%3ABhonlBvYcdPlog%3A2%3A1710853310%3A-1%3A3021... | .facebook.com |

    26.    When someone who is logged into Facebook applies for a credit card on americanexpress.com, the Pixel transmits PII from these Facebook cookies to Facebook along with their event data, including their sensitive financial information.  For instance, the c_user cookie contains a visitor's Facebook ID.

    27.    A Facebook ID is personally identifiable information.  Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of facebook.com.

    28.    The combination of the event data and the PII from Facebook's cookies embedded on americanexpress.com permits Facebook to see sensitive financial information for specific individuals.

**IV.     Consumers Whose Credit Card Applications Are Rejected Do Not Agree To Arbitration**

29.     Consumers are required to agree to Defendant's Terms and Conditions before submitting a credit card application on americanexpress.com.  Those Terms and Conditions do not include an arbitration provision.

30.     Defendant's Card Member Agreement does include an arbitration clause, but applicants are not required to agree to the Card Member Agreement, and the Card Member Agreement is not incorporated into the application Terms and Conditions by reference.

31.     To the contrary, the application Terms and Conditions state that applicants are only bound by the Card Member Agreement if their application is accepted:  "When you use your Account (or sign or keep the Card), you agree to the terms of the Card Member Agreement that will be provided to you."

32.     Accordingly, consumers like Plaintiff, whose credit card applications are denied, never agree to the Card Member Agreement or the arbitration provision contained therein.

## <u>CLASS ALLEGATIONS</u>

33.     **Class Definition:**  Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in California with a Facebook account who applied for a credit card on americanexpress.com and had their application rejected (the "Class").  Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate.

34.     **Numerosity (Fed. R. Civ. P. 23(a)(1)):**  At this time, Plaintiff does not know the exact number of members of the aforementioned Class.  However, given the popularity of Defendant's website and credit cards, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

35.    **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):**  There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

    (a)  whether Defendant disclosed Plaintiff's and the Class's PII and financial information to Facebook;

    (b)  whether Defendant's disclosures were committed knowingly; and

    (c)  whether Defendant disclosed Plaintiff's and the Class's PII and financial information without consent.

36.    **Typicality (Fed. R. Civ. P. 23(a)(3)):**  Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used Defendant's website to apply for a credit card, had his credit card application rejected, and had his PII and financial information collected and disclosed by Defendant.

37.    **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the Facebook Tracking Pixel and CIPA. Plaintiff and his counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class.  Neither Plaintiff nor his counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiff has raised viable statutory claims or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Class to address any steps that Defendant took.

38. **Superiority (Fed. R. Civ. P. 23(b)(3)):**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I
### Violation Of The California Invasion Of Privacy Act
### Cal. Penal Code § 631(a)

39. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

40. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

41. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).  Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

*Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

42.     CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email.  *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

43.     Facebook's Business Tools, including but not limited to the Facebook Pixel, are each a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

44.     Facebook is a "separate legal entity that offers [a] 'software-as-a-service' and not merely a passive device."  *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Further, Facebook had the capability to use the wiretapped information for its own purposes. Accordingly, Facebook was a third party to any communication between Plaintiff and Class Members, on the one hand, and Defendant, on the other.  *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

45.     At all relevant times, by its Business Tools, Facebook willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and Class Members, on the one hand, and Defendant, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

46.     At all relevant times, Facebook used or attempted to use the communications intercepted by its Business Tools to promote and improve its advertising platform.

47.     At all relevant times, Defendant aided, agreed with, employed, permitted, or otherwise enabled Facebook to wiretap Plaintiff and Class Members using the Business Tools and to accomplish the wrongful conduct at issue here.

48.     Plaintiff and Class Members did not provide their prior consent to Facebook's intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and Class Members' electronic communications.  Nor did Plaintiff and Class Members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling Facebook's conduct.

49.     The wiretapping of Plaintiff and Class Members occurred in California, where Plaintiff and Class Members accessed the Website and where Facebook—as enabled by Defendant—routed Plaintiff's and Class Members' electronic communications its servers.

50.     Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 631(a).

## COUNT II
## Violation Of The California Invasion Of Privacy Act,
## Cal. Penal Code § 632

51.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

52.     Plaintiff brings this claim against Defendant individually and on behalf of the Class.

53.     CIPA § 632(a) prohibits an entity from:

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

54.     Facebook's Business Tools, including but not limited to the Facebook Pixel, are "electronic amplifying or recording device[s]."

55.     At all relevant times, Facebook intentionally used its Business Tools to eavesdrop upon and record the confidential communications of Plaintiff and Class Members, on the one hand, and Defendant, on the other.

56.     When communicating with Defendant, Plaintiff and Class Members had an objectively reasonable expectation of privacy.  Thus, Plaintiff and Class Members did not

14

reasonably expect that anyone other than Defendant would be on the other end of the communication, and that other, third-party entities like Facebook, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Class Members.

57.     Plaintiff and Class Members did not consent to any of Facebook's actions.  Nor have Plaintiff or Class Members consented to Facebook's intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     An award of statutory damages to the extent available;

(e)     For punitive damages, as warranted, in an amount to be determined at trial;

(f)     For prejudgment interest on all amounts awarded;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and

expenses and costs of suit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: March 29, 2024

Respectfully submitted,

By: */s/ Joshua D. Arisohn*
       Joshua D. Arisohn

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Philip L. Fraietta
Alec M. Leslie
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
       pfraietta@bursor.com
       aleslie@bursor.com

*Attorneys for Plaintiff*