UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIP CAMACHO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

AMERICAN EXPRESS COMPANY,

Defendant.

Case No. 1:24-cv-02408-JPC

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

A. The Meta Pixel. ..... 3

B. American Express's Alleged Installation and Use of the Meta Pixel. ..... 4

C. Plaintiff Consented to the Collection of His Data and to a Choice of Law Provision. ..... 5

D. Plaintiff's American Express Credit Card Application and this Lawsuit. ..... 6

LEGAL STANDARD ..... 7

ARGUMENT ..... 8

I. Plaintiff Fails To Plead a Primary Violation by Meta. ..... 9

A. The Complaint Does Not Allege That Meta Intended To Violate Section 631(a) or Section 632. ..... 10

B. Plaintiff Fails To Plead the Elements of a Section 631(a) Violation. ..... 11

1. The Complaint Fails To Allege an Interception While "In Transit." ..... 12

2. The Complaint Fails To Allege That Meta Was a Third Party to the Allegedly Intercepted Communications. ..... 13

3. The Complaint Does Not Allege That the "Contents" of Communications Were Intercepted. ..... 14

C. Plaintiff Fails To Plead the Elements of a Section 632 Violation. ..... 16

1. The Complaint Fails To Plead Facts Showing the Interception of a "Confidential" Communication. ..... 16

2. Plaintiff's Conclusory Assertion That the Meta Pixel Is a "Device" Should Be Rejected. ..... 17

3. Section 632 Does Not Encompass Meta's Alleged Conduct. ..... 19

D. Plaintiff Agreed To the Collection at Issue and the Application of New York Law, Which Defeats His Claims. ..... 19

1. Plaintiff Consented To the Collection and Sharing of His Data. ..... 19

2. California Law Does Not Apply to Plaintiff's Claim. .............................. 22

II. American Express Cannot Be Held Liable Under an Aiding-and-Abetting Theory. ....... 23

A. CIPA Section 632 Does Not Authorize Aiding-and-Abetting Liability. ............. 23

B. Plaintiff Fails To State a Claim for Aiding and Abetting Under Section 631 .................................................................................................................. 23

III. Plaintiff Fails To Plead a Timely Claim. .......................................................................... 25

CONCLUSION .......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021)....12

*AEI Life LLC v. Lincoln Benefit Life Co.*,
892 F.3d 126 (2d Cir. 2018)....22

*Alexandre v. Alcon Labs., Inc.*,
2024 WL 623707 (S.D.N.Y. Feb. 14, 2024)....3

*Am. C.L. Union v. Clapper*,
804 F.3d 617 (2d Cir. 2015)....16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....7, 14, 17

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)....10, 11, 12

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....14, 25

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
2022 WL 837596 (S.D.N.Y. Mar. 21, 2022)....5

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)....8, 13

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)....16

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)....18

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
92 F.4th 381 (2d Cir. 2024)....15

*Clarke v. Horany*,
212 Cal. App. 2d 307 (1963)....23

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018)....16

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ....................8

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....................14

*Coscarelli v. ESquared Hosp. LLC*,
364 F. Supp. 3d 207 (S.D.N.Y. 2019)....................22

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ....................18

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
747 F.3d 145 (2d Cir. 2014)....................15

*Dunahoo v. Hewlett-Packard Co.*,
2012 WL 178332 (S.D.N.Y. Jan. 20, 2012) ....................15

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024)....................24

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. Cal.*,
2015 WL 13273308 (C.D. Cal. July 29, 2015)....................11

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................19, 20, 21

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....................17, 19

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................18

*Heinz v. Amazon.com Inc.*,
2024 WL 2091108 (W.D. Wash. May 8, 2024)....................23

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995)....................7

*Huizenga v. NYP Holdings, Inc.*,
2019 WL 1620743 (S.D.N.Y. Apr. 16, 2019)....................12

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................16, 17

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023)....................13

*James v. Walt Disney Co.*,
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) ....................24, 25

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 6466195 (N.D. Cal. Oct. 3, 2023)....................10

*Kibler v. N. Inyo Cnty. Loc. Hosp. Dist.*,
39 Cal. 4th 192 (2006) ....................17

*Kimmel v. Goland*,
51 Cal. 3d 202 (Cal. 1990)....................23

*Lexin v. Superior Court*,
47 Cal. 4th, 1050, 1091 (2010) ....................24

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ....................12

*Lloyd v. Facebook, Inc.*,
2022 WL 4913347 (N.D. Cal. Oct. 3, 2022)....................21

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ....................10

*Lozano v. City of L.A.*,
73 Cal. App. 5th 711 (2022) ....................11

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ....................8, 19

*Mason v. Mach Zone, Inc.*,
140 F. Supp. 3d 457 (D. Md. 2015)....................18

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................18

*Mikulsky v. Bloomingdales, LLC*,
2024 WL 337180 (S.D. Cal. Jan. 25, 2024)....................14

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017)....................18

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................17

*People v. Johnson*,
50 Cal. App. 5th 620 (2020) ....................18

*Quigley v. Yelp, Inc.*,
2018 WL 7204066 (N.D. Cal. Jan. 22, 2018)....8

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)....12

*Rodriguez v. Ford Motor Co.*,
2024 WL 1223485 (S.D. Cal. Mar. 21, 2024)....24

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (Ct. App. 1975)....13

*Roth v. CitiMortgage Inc.*,
756 F.3d 178 (2d Cir. 2014)....7

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023)....17

*Silver v. Stripe, Inc.*
2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021)....21

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)....20, 22

*Smith v. Facebook, Inc.*,
745 Fed. Appx. 8 (9th Cir. 2018)....20, 22

*Snyder v. Fantasy Interactive, Inc.*,
2012 WL 569185 (S.D.N.Y. Feb. 9, 2012)....13

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978)....12

*Vartanian v. VW Credit, Inc.*,
2012 WL 12326334 (C.D. Cal. Feb. 22, 2012)....10

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....12

*Wolfe v. City of Fremont*,
144 Cal. App. 4th 533 (2006)....23

*Yague v. Visionaire Publ'g LLC*,
2021 WL 4481178 (S.D.N.Y. Sept. 29, 2021)....7

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)....13

**Statutes**

Cal. Civ. Code § 1798.140(ag)(1)....................4

Cal. Pen. Code § 631.................... *passim*

Cal. Pen. Code, § 632.................... *passim*

Cal. Pen. Code § 632.5....................8

Cal. Pen. Code § 632.01....................8

Cal. Pen. Code § 633.02....................8

Cal. Penal Code § 637.2....................23

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)....................18

Merriam-Webster Dictionary (1978) ....................18

Defendant American Express Travel Related Services Company, Inc. ("American Express") (incorrectly named as American Express Company) respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Class Action Complaint (the "Complaint" or "Compl.").

**PRELIMINARY STATEMENT**

Plaintiff joins a recent wave of lawsuits across the country attempting to repurpose decades-old wiretapping laws to challenge the use of cookies and other common Internet technologies in pursuit of windfall statutory damages awards. Some of the latest targets are websites that employ the Meta (f/k/a Facebook) Pixel—a commonly installed piece of software code that can provide insights about how users interact with webpages and allow companies to serve relevant advertisements to people who may be interested in their services. In this action, plaintiff contends that American Express installed the Meta Pixel on its website to collect and share with Meta financial information that plaintiff allegedly submitted to apply for a credit card, and thereby aided and abetted Meta's alleged violation of the California Invasion of Privacy Act ("CIPA") Sections 631(a) and 632.

Plaintiff's theory is false. But more critically for the purposes of this motion, plaintiff's skeletal factual allegations do not state a claim for relief. While plaintiff asserts in conclusory terms that the Meta Pixel collected his credit card application information, the Complaint's factual allegations do not support that theory. To the contrary, they undermine it. As the Complaint admits, Meta expressly *prohibits* companies like American Express from using the Meta Pixel to collect and share financial information. The Complaint does not allege that American Express configured the Pixel to share this information in violation of Meta's terms. Indeed, the only non-conclusory allegation in the Complaint about what the Meta Pixel installed

on American Express's website captures is that it transmits a user's Facebook ID—which plainly includes no financial or confidential information.

The Complaint also fails to plead the elements required to state a CIPA claim. Recognizing that American Express cannot wiretap communications sent to itself, plaintiff seeks to impute liability indirectly by claiming that American Express aided and abetted Meta's alleged violations of CIPA Section 631(a) and Section 632. But that roundabout theory fails to state a claim for multiple reasons.

To start, plaintiff fails to establish the underlying elements of a predicate violation of either Section 631(a) or Section 632 by Meta. For example, he completely fails to allege that Meta acted "intentionally" or "willfully" in allegedly wiretapping his communications, as required to plead a claim under those provisions. Nor are there any factual allegations that Meta, acting as a third party, intercepted the "contents" of any communications while "in transit" (as required for his Section 631(a) claim), or that Meta used an "electronic amplifying or recording device," to "eavesdrop" or "record" any "confidential communication" (as required for his Section 632 claim). Moreover, both claims fail for the additional reason that plaintiff consented—in multiple ways and in multiple agreements—to the collection of his data through the Meta Pixel and agreed to the application of New York law.

Even if plaintiff could allege a predicate CIPA violation by Meta, he fails to plead a claim that American Express aided and abetted any violation. Plaintiff does not plead factual allegations that American Express had the knowledge required for aiding and abetting liability under Section 631(a). And Section 632 does not provide for aiding and abetting liability.

Accordingly, the Complaint should be dismissed with prejudice.

## BACKGROUND[1]

### A. The Meta Pixel.

The Meta Pixel is a "piece of code" that can be installed on websites and configured to track certain types of "events," *i.e.*, defined actions taken by visitors on the site.[2] For example, the Pixel can be configured to identify the pages users access, the buttons they click, and website metadata.[3] What specific events or information the Meta Pixel transmits depends on how it is configured on a given website.[4] For example, the Meta Pixel does not capture field values (*e.g.*, information users enter into form fields) unless specifically configured to do so.[5]

How Meta processes and uses information it receives also depends on how the specific installation of the Pixel is configured. For example, website operators can enable the limited data use ("LDU") option to limit data processing for website visitors in specific states, including California.[6] Enabling LDU for website visitors in California limits how Meta uses information from these users, including by requiring Meta to act as a "Service Provider" and preventing Meta from selling or sharing that information, combining it with personal information it receives from

---

[1] By referencing the Complaint's allegations in connection with its motion to dismiss, American Express is not admitting their truth.

[2] Compl. ¶ 20; Meta Pixel, https://developers.facebook.com/docs/meta-pixel/. The Court may take judicial notice of the existence of documents appearing on Meta's Developer's Website as they are "publicly available" and there is no dispute as to their authenticity. *Alexandre v. Alcon Labs., Inc.*, 2024 WL 623707, at *3 (S.D.N.Y. Feb. 14, 2024).

[3] Compl. ¶ 21; *see also* Meta Pixel, https://developers.facebook.com/docs/meta-pixel/.

[4] *See* Conversion Tracking, https://developers.facebook.com/docs/meta-pixel/implementation/conversion-tracking (explaining different configuration options for the Meta Pixel).

[5] *See* Meta Pixel, https://developers.facebook.com/docs/meta-pixel/ ("We don't capture field values unless you include them as part of Advanced Matching or optional values.").

[6] Data Processing Options for US Users, https://developers.facebook.com/docs/marketing-apis/data-processing-options/.

other sources, or using it for any purposes other than those permitted for "Service Providers" under the California Consumer Privacy Act.[7]

### B. American Express's Alleged Installation and Use of the Meta Pixel.

American Express is a banking and payment card company based in New York, New York. Compl. ¶ 7. American Express offers various credit cards that individuals can apply for on its website (americanexpress.com). *Id.* ¶¶ 7, 22.

Plaintiff alleges that American Express installed the Meta Pixel on unspecified webpages where users could apply for American Express credit cards. *Id.* ¶ 22. Plaintiff then contends that the Meta Pixel "track[s] all of the information that applicants enter" on these webpages, which include fields for "names, dates of birth, email addresses, phone numbers," "home addresses," "social security numbers," and "sensitive financial information such as . . . total annual income and the source of that income." *Id.* ¶¶ 23–24.

But plaintiff provides no factual allegations to back up these assertions. He provides no information about the configuration of the Pixel on American Express's website, including whether it was specifically configured to send field values for the application fields. In the section of the Complaint providing the supposed factual allegations underlying his assertions, plaintiff claims that "americanexpress.com contains the code for at least nine different Facebook cookies" identified in the Complaint, one of which "contains a visitor's Facebook ID." *Id.* ¶ 26. But he does not allege that any of these cookies contain or transmit financial information. Instead, he asserts in a conclusory fashion that the Meta Pixel also transmits unspecified "event

[7] Data Processing Options for US Users, https://developers.facebook.com/docs/marketing-apis/data-processing-options/; State-Specific Terms, https://www.facebook.com/legal/terms/state-specific. "Service Provider" is interpreted "in accordance with" applicable "US Privacy Laws," including the California Privacy Rights Act. State-Specific Terms, https://www.facebook.com/legal/terms/state-specific; *see* Cal. Civ. Code § 1798.140(ag)(1) (defining "Service Provider").

data, including [users'] sensitive financial information." *Id.* Elsewhere, plaintiff concedes that Meta's terms specifically required Pixel users to "represent and warrant" that they would *not* share financial or sensitive information with Meta. *Id.* ¶ 24.

Plaintiff also does not allege what Meta did with the information it purportedly collected from American Express's website. Plaintiff asserts in general terms that after capturing an action through the Meta Pixel, Meta "processes it, analyzes it, and assimilates it" into Meta's datasets. *Id.* ¶ 20. But plaintiff does not allege how the Meta Pixel on American Express's website was configured, including whether LDU was enabled, which would prevent Meta from retaining or using data transmitted through the Pixel for its own purposes.

### C. Plaintiff Consented to the Collection of His Data and to a Choice of Law Provision.

Plaintiff admits in the Complaint that he was required to agree to American Express's Terms and Conditions to submit a credit card application on American Express's website. *See* Compl. ¶ 29. These Terms and Conditions state "You authorize us and our affiliates and subsidiaries to share information we have about you at any time for marketing and administrative purposes as permitted by law." *See, e.g.*, Ex. 1.[8] The Terms and Conditions also incorporate by reference and link to the American Express Privacy Statement. *Id.*

[8] References to "Ex." refer to the exhibits attached to the Declaration of Kathryn Cahoy filed with this motion. The Court may consider the terms to which plaintiff agreed because they are integral to the Complaint and subject to judicial notice. *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *1 n.2 (S.D.N.Y. Mar. 21, 2022) (considering terms of service "expressly referenced in the complaint" and "publicly available on the internet" as "integral" to the complaint and judicially noticeable). An exemplar of the Terms and Conditions for the American Express Gold Card is included as Ex. 1, and the Terms and Conditions for other cards are available under "Offer & Benefit Terms" at https://www.americanexpress.com/us/credit-cards/. The Privacy Statement is included as Ex. 2, and also is available at https://www.americanexpress.com/us/company/privacy-center/online-privacy-disclosures/.

The American Express website also informs users at the bottom of each page: "All users of our online services are subject to our Privacy Statement and agree to be bound by the Terms of Service. Please review." Ex. 3. The website includes directly above that hyperlinks to the Terms of Service and a webpage titled "Privacy Center," which includes FAQs about privacy and a link to American Express's Privacy Statement. *Id.*

The Privacy Statement provides users with detailed information regarding what data is collected on the site, by whom, and for what purposes. For example, it informs users that "We (and our Service Providers or Third-Party Ad-Servers) may collect information using Cookies and Similar Technologies," including "web beacons, *pixels*, gifs, tags, and device ID technology." Ex. 2 (emphasis added). The Terms of Service includes a governing law provision stating that "Users of this Site agree to submit to the laws of the State of New York, USA, and applicable federal law without regard to conflicts of laws principles." Ex. 4 ¶ 20.

In addition, as an "active Facebook account" holder "for numerous years," plaintiff was required to agree to Meta's Terms of Service, which incorporated by reference Meta's Privacy Policy and Cookies Policy. Compl. ¶ 6; Exs. 5–6. These terms specifically informed users that Meta "collect[s] and receive[s] information from partners" about "[w]ebsites you visit and cookie data, like through Social Plugins or *the Meta Pixel*." Ex. 6 (emphasis added).

### D. Plaintiff's American Express Credit Card Application and this Lawsuit.

Plaintiff is a California resident who alleges that he applied for a credit card on americanexpress.com "in or about March 2023" and that his application was denied. Compl. ¶¶ 1, 6. 32. Plaintiff asserts that, in connection with his application, he submitted "sensitive" information, including his "social security number, his total annual income and his income source," and that American Express used the Meta Pixel to "send all of this information to Meta" without his consent. *Id.* ¶ 6.

Plaintiff filed this action on March 29, 2024, claiming that American Express violated CIPA Sections 631(a) and 632 by "aiding, agreeing with, employing, permitting, or otherwise enabling" Meta's "interception" of his communications. *Id.* ¶¶ 2, 47–48, 55. He purports to bring these claims as a putative class action on behalf of "all persons in California who applied for a credit card on americanexpress.com and had their application rejected." *Id.* ¶ 33.

**LEGAL STANDARD**

A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible only when it is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must draw "*plausible* inferences from the factual allegations of the complaint, it is not permitted to draw an inference that is merely conceivable, when other inferences are more or equally plausible." *Yague v. Visionaire Publ'g LLC*, 2021 WL 4481178, at *2 (S.D.N.Y. Sept. 29, 2021) (emphasis in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, the Court may consider any documents "incorporated in [the Complaint] by reference," "matters of which judicial notice may be taken," and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014). The Court need not accept the truth of allegations that are contradicted by materials incorporated by reference or subject to judicial notice or by more specific allegations in the Complaint. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094–95 (2d Cir. 1995).

## ARGUMENT

Although plaintiff's claims are civil in nature, they derive from two sections of a criminal statute that must be construed narrowly and limited to the "clear import of [its] text." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (rule of lenity applies to civil claim under penal statute).

CIPA Section 631(a) prohibits (1) "intentional wiretapping" of a "telegraph or telephone wire, line, cable, or instrument"; (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire"; and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Cody v. Ring LLC*, 2024 WL 735667, at *2 (N.D. Cal. Feb. 22, 2024).[9] It further prohibits aiding and abetting this conduct. *Id.*

Section 632, enacted in 1967, was "designed to combat illicit recording of telephonic communications." *Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018). It imposes liability on a party who "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Pen. Code § 632(a). Section 632 protects only confidential communications and does not apply where "the parties to the communication may reasonably expect that the communication may be overheard or recorded." *Id.*

The California legislature has amended CIPA over the years to address new advances in technology, including cellular telephones, Cal. Pen. Code § 632.5 (1985), body-worn cameras, § 633.02 (2016), and confidential health care communications on the Internet, § 632.01(a)(1)

[9] Courts have limited the "intentional wiretapping" clause of Section 631(a) to instances of "telephonic wiretapping" and hold this claim "does not apply to the context of the internet." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1065 (C.D. Cal. 2023) (collecting cases). Plaintiff thus does not and cannot assert a claim under this clause. *See* Compl. ¶ 45.

(2016). But it has not amended CIPA to address data collection on Internet websites more generally. Instead, it passed a comprehensive consumer privacy regime in June 2018, to govern the collection, sale, and use of certain consumer information by companies operating in California. Plaintiff does not and cannot claim that American Express violated those laws, but instead seeks to shoehorn his claims into the decades-old criminal wiretapping statute, CIPA. CIPA does not cover the alleged conduct at issue here for multiple reasons.

*First*, plaintiff premises his claims against American Express on a theory that American Express aided and abetted a CIPA violation by Meta but has not plausibly alleged any underlying violation by Meta. He does not allege Meta's intent to violate either Section 631(a) or Section 632. Nor does he plead the other requisite elements of a claim under either section. Moreover, plaintiff's consent to the use of pixel technology and to the application of New York law as a condition of using American Express's website defeats his claims.

*Second*, even if plaintiff could plausibly allege a predicate violation, plaintiff does not adequately allege American Express's knowledge or intent to support an aiding-and-abetting claim. And Section 632 does not contain a provision for aiding and abetting at all, so that claim cannot proceed as matter of law.

*Finally*, plaintiff's claims are untimely because he fails to allege he submitted a card application within one year of filing his Complaint.

## I. Plaintiff Fails To Plead a Primary Violation by Meta.

Plaintiff fails to plead an underlying predicate violation of CIPA Section 631(a) or Section 632 by Meta, which requires dismissal of his aiding-and-abetting claims.

### A. The Complaint Does Not Allege That Meta Intended To Violate Section 631(a) or Section 632.

To allege an underlying violation of CIPA, plaintiff first must show that Meta acted with the requisite intent. *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) (Section 631(a)); *Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (Section 632). CIPA imposes a "higher intent requirement" than other wiretap laws. *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021). To state a claim under Section 631(a) or Section 632, plaintiff must "allege specific facts that indicate" Meta willfully or intentionally intercepted his communications. *Vartanian*, 2012 WL 12326334, at *2; Cal. Pen. Code § 631(a) (prohibiting willful conduct); § 632(a) (prohibiting intentional conduct). This requires plausibly alleging that Meta had "the 'purpose or desire' of recording the communication [at issue] or the 'knowledge to a substantial certainty' the communication will be recorded." *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 6466195, at *4 (N.D. Cal. Oct. 3, 2023) (applying this standard to Section 631(a)); *Lopez*, 519 F. Supp. 3d at 689 (same for Section 632). Further, under Section 632, plaintiff must plead Meta's "intent to intercept *confidential* communications, rather than communications generally." *Lopez*, 519 F. Supp. 3d at 689.

Plaintiff has not pleaded any facts showing that Meta willfully or intentionally intercepted or recorded plaintiff's communications. Plaintiff's threadbare, conclusory assertions that Meta "intention[ally]" intercepted his communications, Compl. ¶¶ 48, 55, 57, fail to satisfy Rule 8's pleading standard, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Vartanian*, 2012 WL 12326334, at *2 (dismissing Section 632 claim where "Plaintiff fail[ed] to allege specific facts that indicate that there was an intentional recording of a confidential communication").

The Complaint also lacks any allegation that Meta knew or intended for American Express to collect the *contents* of communications, much less confidential communications as required by Section 632. Providing a generally accessible tool that other companies can incorporate into their websites does not suffice to show intentional or willful conduct on a specific site. *See Federated Univ. Police Officers' Ass'n v. Regents of Univ. Cal.*, 2015 WL 13273308, at *10 (C.D. Cal. July 29, 2015) (dismissing Section 632 and other CIPA claims for lack of intent where plaintiff asserted only that the defendant sold "and install[ed] the recording system"); *Lozano v. City of L.A.*, 73 Cal. App. 5th 711, 728 (2022) (complaint failed to allege intent where the defendant "understood it was deploying recording devices that *might* happen to record a confidential communication—not that [it] intended to record those communications").

Moreover, the sparse factual allegations the Complaint actually includes undermine the theory that Meta acted willfully or intentionally. While plaintiff asserts that the Meta Pixel collected his financial information, he admits that Meta's terms specifically required companies incorporating the Pixel to "represent and warrant" that they would *not* share with Meta "financial information or other categories of sensitive information." Compl. ¶ 24. Plaintiff does not plead any facts suggesting that Meta knew or believed American Express violated these terms (and, to be clear, it did not). Accordingly, plaintiff's "allegations indicate that Meta either had no intention of receiving the data at issue or had some alternative *mens rea* not rising to the level of intentionality." *B.K.*, 2024 WL 1343305, at *7 (dismissing Section 631(a) aiding-and-abetting claim because of the plaintiff's failure to allege that Meta acted "willfully" or "intentionally," in light of "Meta's express desire not to receive health data from its business partners").

### B. Plaintiff Fails To Plead the Elements of a Section 631(a) Violation.

To state a predicate violation under Section 631(a), plaintiff also must allege that Meta was a third party that secretly learned "the contents or meaning of a communication" while "in

transit over a wire."[10] *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 191 n.1, 192 (1978); *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). As explained below, plaintiff fails to plead (1) an interception while "in transit," (2) that Meta acted as a third party with respect to any relevant communications, as opposed to a service provider for American Express, and (3) that any "contents" of communications were intercepted. *See B.K.*, 2024 WL 1343305, at *7 (dismissing Section 631(a) claim where plaintiffs "failed to establish a predicate CIPA violation by Meta").

**1. The Complaint Fails To Allege an Interception While "In Transit."**

The Complaint fails to plead that any alleged communications were acquired while "in transit." Cal. Penal Code § 631(a). For this element, plaintiff must allege facts showing that Meta read or learned the contents of a communication "in the process of being sent or received." *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *3–4 (C.D. Cal. Aug. 2, 2021).

Plaintiff offers only the bare assertion that his communications were intercepted while they "were in transit or were being sent from or received at any place within California." Compl. ¶ 45. But "[a] proper complaint cannot simply recite legal conclusions or bare elements of a cause of action." *Huizenga v. NYP Holdings, Inc.*, 2019 WL 1620743, at *2 (S.D.N.Y. Apr. 16, 2019). Courts thus have not hesitated to reject threadbare allegations similar to plaintiff's here. *See, e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing "vague allegations [that the alleged] data collection occurs 'in real time'"); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) ("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission

[10] Plaintiff's claim that Meta "used or attempted to use the communications intercepted by its" Pixel, Compl. ¶ 46, necessarily depends on, and thus fails for the same reasons as, his claim that Meta unlawfully intercepted his communications. Cal. Pen. Code § 631(a) (prohibiting interception of contents of a communication while in transit and imposing liability on a party "who uses, or attempts to use . . . any information *so obtained*" (emphasis added)).

and in real time.'"); *Snyder v. Fantasy Interactive, Inc.*, 2012 WL 569185, at *2 (S.D.N.Y. Feb. 9, 2012) (dismissing Wiretap Act claim with prejudice where plaintiff "plead[s] no facts suggesting that Defendants accessed their communications during transmission").

### 2. The Complaint Fails To Allege That Meta Was a Third Party to the Allegedly Intercepted Communications.

Section 631(a) prohibits "listen[ing] secretly to what is said in private," but courts have recognized that "only a third party can listen secretly to a private conversation." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (Ct. App. 1975). A participant to a conversation consequently cannot be liable under Section 631(a) for wiretapping a communication to itself even when using a tool like a tape recorder to do so. *Id.* Likewise, if a party uses a digital tool in the form of a service provider or vendor acting as an extension of the party, the service provider falls within this party exception and cannot be found liable for "secretly" intercepting or listening to the communication. *See Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (dismissing Section 631(a) claim where the defendant was "a vendor that provides a software service that allows its clients to monitor their website traffic"); *Byars*, 656 F. Supp. 3d at 1068 (holding that third-party vendor was an "extension" of the defendant's website and not a "third-party eavesdropper" and dismissing Section 631(a) claim); *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *1, 3 (N.D. Cal. Dec. 22, 2023) (dismissing Section 631(a) claim where vendor that "provide[d] software which monitor[ed] and record[ed] a website user's activity on a webpage" had "merely recorded the communication for retrieval by a party to the same communication").

Plaintiff does not dispute that American Express is a party to his alleged communications as the operator of the website where he sent those communications. And plaintiff does not adequately allege that Meta acted as anything other than a service provider to American Express. While plaintiff asserts that Meta "had the *capability* to use the [allegedly] wiretapped

information for its own purposes," Compl. ¶ 44 (emphasis added), he fails to plead any factual allegations showing that Meta could do so with respect to the information at issue here. Indeed, when the LDU option is enabled for the Pixel on a website, Meta can act only as a service provider with respect to any covered data. *See* Part A. Where, as here, allegations "merely describ[e] the capabilities" of the Pixel without alleging how the tool "was configured" on the website at issue, they do not state a plausible claim for relief. *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 69–70 (W.D. Pa. 2023); *see also Iqbal*, 556 U.S. at 679 (factual allegations that demonstrate, at most, only "the mere possibility" of liability do not satisfy Rule 8(a)(2)).

### 3. The Complaint Does Not Allege That the "Contents" of Communications Were Intercepted.

Plaintiff has not plausibly alleged that Meta intercepted the "contents" of any communications. "Contents" under Section 631(a) "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Mikulsky v. Bloomingdales, LLC*, 2024 WL 337180, at *7 (S.D. Cal. Jan. 25, 2024); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (same). For example, "button clicks, mouse movements, scrolling," and "page navigation" do not constitute "contents" and cannot support a claim under Section 631(a). *Mikulsky*, 2024 WL 337180, at *7. "[U]ser names and passwords" similarly are not "contents." *Brodsky*, 445 F. Supp. 3d at 127.

By default, the Meta Pixel does not capture field values (*e.g.*, information users enter into form fields) unless specifically configured to do so.[11] Plaintiff provides no factual allegations regarding the configuration on American Express's site that would render plausible the notion

---

[11] *See* Meta Pixel, https://developers.facebook.com/docs/meta-pixel/ ("We don't capture field values unless you include them as part of Advanced Matching or optional values.").

that this default was changed. Instead, he asserts in conclusory fashion, with no underlying factual support, that financial information contained in the card application is transmitted. Compl. ¶¶ 6, 21, 24. Where, as here, the Complaint is "devoid of any facts to support a plausible claim" that the Meta Pixel was configured in a way that would capture his financial information, he cannot state a claim for relief. *Dunahoo v. Hewlett-Packard Co.*, 2012 WL 178332, at *3 (S.D.N.Y. Jan. 20, 2012) (dismissing claim based on "sweeping conclusory statements" unsupported by specific factual assertions); *see also City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 390 (2d Cir. 2024) ("The factual allegations must, at the very least, raise a right to relief above the speculative level.").

That is particularly true in this case, where the actual factual allegations render the collection of sensitive financial information implausible. "Although factual allegations of a complaint are normally accepted as true on a motion to dismiss . . . that principle does not apply to general allegations that are contradicted 'by more specific allegations in the Complaint.'" *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014). Plaintiff admits that Meta's terms required Pixel users to "represent and warrant" they will not send "financial information or other categories of sensitive information," Compl. ¶ 24, and the Complaint includes no allegation that American Express configured the Pixel to violate these terms. Moreover, in the section of the Complaint where plaintiff includes screenshots of the information supposedly transmitted by the Pixel, notably absent is any indication that plaintiff's financial information was being transmitted. *See* Compl. ¶¶ 25–28. Instead, that section alleges that the tool "transmits" nine "Facebook cookies," only one of which is alleged to include any specific information—"a visitor's Facebook ID." *Id.* ¶ 26.

But a Facebook ID—a string of numbers assigned to a Facebook user profile—does not constitute the "contents" of a communication. For example, in *In re Zynga Privacy Litigation*, the Ninth Circuit held that headers containing users' Facebook ID information and the address of the webpage a Facebook user was viewing when they clicked on a link were not "contents" under the federal Wiretap Act. 750 F.3d 1098, 1107 (9th Cir. 2014). As the court explained in *Zynga*, while a Facebook ID provides information about *who* visits a website, it provides no information about the "substance, purport, or meaning of a communication" and thus does not constitute the "contents" of a communication. *Id.*; *see also Am. C.L. Union v. Clapper*, 804 F.3d 617, 619 (2d Cir. 2015) ("[D]etails *about* the call, such as … the phone number from which the call was made" are not "the contents of a telephone call." (emphasis in original)).

**C. Plaintiff Fails To Plead the Elements of a Section 632 Violation.**

Plaintiff also fails to plead the elements of an unlawful interception under CIPA Section 632, which prohibits the "intentional[]" use of an "electronic amplifying or recording device" to eavesdrop upon or record a "confidential communication." Cal. Penal Code § 632(a). Plaintiff fails to plausibly allege (1) the interception of a "confidential" communication, (2) use of an "electronic amplifying or recording device," and (3) an "eavesdrop" or "recording."

**1. The Complaint Fails To Plead Facts Showing the Interception of a "Confidential" Communication.**

Plaintiff does not plead facts that establish the interception of "confidential" communications as they are defined by the statute. California courts generally presume that "[i]nternet-based communications are not 'confidential' within the meaning of section 632." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051–52 (N.D. Cal. 2018); *see Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (same). That is because internet communications are "by their very nature recorded on the computer of at least the recipient, who

may then easily transmit the communication to anyone else who has access to the internet." *In re Google Inc.*, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013); *accord In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016) ("Most of us understand that what we do on the Internet is not completely private.").

As explained above in Part I.B.3, the Complaint includes no well-pleaded facts to support plaintiff's speculation that the Meta Pixel collected his sensitive financial information. In the absence of any such facts, the most the Complaint alleges is that the Meta Pixel collected Facebook ID information for those users who were logged into their Facebook accounts when they accessed American Express's website. Compl. ¶ 26. This does not support a claim under Section 632. *See, e.g.*, *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (dismissing CIPA claims alleging collection of browsing data and unique user identifiers because such data is not sufficiently personal or private); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) ("[T]he Court is hard pressed to conclude that basic contact information, including one's email address, phone number, or Facebook or Zynga username, is private information.").

#### 2. Plaintiff's Conclusory Assertion That the Meta Pixel Is a "Device" Should Be Rejected.

The Complaint also fails to allege the use of a "device" to allegedly eavesdrop or record plaintiff's communications. The Complaint defines the Meta Pixel as a "piece of code" that can be "integrate[d] into" a website. Compl. ¶ 20. Despite that definition, the Complaint later asserts that the Meta Pixel is an "electronic amplifying or recording device." *Id.* ¶ 54. This "threadbare recital[]" "do[es] not suffice" to state this element of the statute, *Iqbal*, 556 U.S. at 678, and it is contrary to the "ordinary and usual meaning" of the term "device" under CIPA, *Kibler v. N. Inyo Cnty. Loc. Hosp. Dist.*, 39 Cal. 4th 192, 199 (2006).

The "most natural reading" of the term "device" "calls to mind" something physical like "a piece of equipment"—not intangible software code on a website. *Mason v. Mach Zone, Inc.*, 140 F. Supp. 3d 457, 462–63 (D. Md. 2015). Consistent with this reading, California courts have held that "[s]oftware like Google Maps, Chrome, etc., are not 'devices' within the meaning of CIPA because they are not 'equipment.'" *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019); *see also Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) (same); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021) (declining to interpret "telephone device" to include iOS Pasteboard).[12]

This is supported by dictionary definitions of the term "device."[13] These definitions show that a "piece of code" installed on American Express's website, Compl. ¶ 18, lacks the requisite physical dimension of a "mechanical invention" or "machine," let alone one designed with the special purpose of eavesdropping on confidential communications, *see Moreno*, 2017 WL 6387764, at *5 (a "device" is commonly defined as "a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment"); Merriam-Webster Dictionary (1978) (defining "device" as "[a] piece of equipment or a mechanism for a special purpose"); Black's Law Dictionary (11th ed. 2019) (defining "device" as "[a] mechanical invention" that "may be an apparatus or an article of manufacture," and referencing the term "machine," which is defined as "consisting of fixed and moving parts"). To the extent there is

[12] Another court reached a different conclusion, but it did so in reliance on a decision that interpreted the definition of "device" under the federal Wiretap Act, not CIPA, which contains different language than the Wiretap Act. *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *7 (N.D. Cal. Sept. 7, 2023) (concluding that Meta's pixel software is a "device" in reliance on *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) (analyzing a statutory exception to "device" under the federal Wiretap Act)).

[13] California courts often look to "dictionary definition[s]" to determine the "plain meaning of a word or phrase as understood by the ordinary person." *People v. Johnson*, 50 Cal. App. 5th 620, 633 (2020).

any ambiguity in this term, it should be construed in American Express's favor because Section 632, as a penal statute, is subject to the rule of lenity. *See LVRC*, 581 F.3d at 1134 (applying rule of lenity to civil application of a penal statute).

### 3. Section 632 Does Not Encompass Meta's Alleged Conduct.

Plaintiff also does not allege "eavesdrop[ping]" or "record[ing]" within the meaning of CIPA Section 632. Courts in California "interpret 'eavesdrop,' as used in section 632, to refer to a third party secretly listening to a conversation between two other parties." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020). As explained above in Part I.B.2, the Complaint lacks any well-pleaded facts showing that Meta was acting as a third party, as opposed to a service provider or vendor.

Moreover, and as discussed below, both Meta and American Express disclosed to users their data collection practices. By its own terms, Section 632 does not apply where the parties "reasonably expect that the communication may be overheard or recorded." Cal. Pen. Code § 632(c). Holding otherwise would criminalize the act of keeping a record of a message that a person lawfully received in the first instance. *See In re Google Inc.*, 2013 WL 5423918, at *23 (dismissing Section 632 claim and noting that "[u]nlike phone conversations, email services are by their very nature recorded on the computer of at least the recipient").

## D. Plaintiff Agreed To the Collection at Issue and the Application of New York Law, Which Defeats His Claims.

Plaintiff's CIPA claims should be dismissed for the independent reasons that (1) he fails to plead facts showing a lack of consent and (2) New York law should govern his claims.

### 1. Plaintiff Consented To the Collection and Sharing of His Data.

CIPA Section 631(a) and 632 prohibit only wiretapping and eavesdropping "without the consent of all parties." Cal. Pen. Code, §§ 631(a), 632(a). Because consent is an element of a

CIPA claim, the plaintiff "has the burden to prove that the defendant lacked consent." *In re Google Assistant*, 457 F. Supp. 3d at 828. Consent provides a complete bar to liability and applies where the plaintiff agreed to terms or privacy policies that "disclose[d] the precise conduct at issue." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–56 (N.D. Cal. 2017), *aff'd.* 745 Fed. App'x 8 (9th Cir. 2018).

Here, while plaintiff declares in conclusory fashion that his information was shared "without Plaintiff's knowledge, consent, or express written authorization," Compl. ¶ 6, he fails to allege any facts showing a lack of consent. To the contrary, the Complaint, the materials it incorporates by reference, and other materials subject to judicial notice demonstrate that plaintiff consented to the collection of his data through the Meta Pixel in at least two ways, either of which defeats his claims.

*First*, plaintiff consented to the collection of his data on American Express's website by agreeing to the American Express Terms and Conditions and Privacy Statement. As the Complaint admits, plaintiff was "required to agree to Defendant's Terms and Conditions before submitting a credit card application on americanexpress.com." Compl. ¶ 29. The Terms and Conditions authorize American Express and its affiliates "to share information we have about you at any time for marketing and administrative purposes as permitted by law." Ex. 1. The Terms and Conditions also incorporate by reference the American Express Privacy Statement, stating "[a]ny information American Express collects from you or from ShopRunner shall be governed by the American Express Online Privacy Statement." *Id.*

Separate from the Terms and Conditions, plaintiff also consented to the Privacy Statement by using American Express's website. The bottom of each webpage on the website states, "All users of our online services are subject to our Privacy Statement and agree to be

bound by the Terms of Service. Please review." Ex. 3. This notice is accompanied by hyperlinks to the Privacy Center (including the Privacy Statement) and the Terms of Service. *Id.*

The American Express Privacy Statement expressly disclosed the use of pixel technology on the website. It explained that American Express and "Service Providers" (including "any vendor, third party and/or company that performs business operations on our behalf") may collect information "through Cookies and Similar Technologies," including "web beacons, *pixels*, gifs, and tags." Ex. 2 (emphasis added).

Plaintiff's consent to the sharing of his data and the use of pixel technology precludes his CIPA claims. For example, in *Silver v. Stripe, Inc.*, the court held that a privacy policy stating that the defendant's "partners" may "'use various technologies' to 'collect information about your online activity over time and across different websites or online services'" was sufficiently specific to establish the plaintiffs' consent to the collection of their data by a third party payment processor. 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021). As in *Silver*, plaintiff here "consented to the collection of the data at-issue." *Id.* at *4. At a minimum, American Express's disclosures show that plaintiff has failed to plausibly allege a lack of consent, as required to plead a CIPA claim. *In re Google Assistant*, 457 F. Supp. 3d at 828.

*Second*, by maintaining a Facebook account, Compl. ¶ 6, plaintiff also necessarily agreed to Meta's Terms of Service and Privacy Policy, which provided for the collection of data from third parties through the Pixel.[14] Exs. 5–6. Specifically, Meta's Privacy Policy stated that "[w]e collect and receive information from partners, measurement vendors, marketing vendors and

[14] As one court has recognized, Meta's "relationship with users—including Plaintiff—is governed by [Meta's] Terms of Service . . . to which all users must agree to create a Facebook account." *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *1 (N.D. Cal. Oct. 3, 2022). Meta's Terms of Service "incorporate" by reference Meta's Privacy Policy. *Id.*

other third parties about . . . [w]ebsites you visit and cookie data, like through Social Plugins or *the Meta Pixel*." Ex. 6 at 7 (emphasis added). Meta's Privacy Policy further explained that "[p]artners also share information like your email address, cookies and advertising device ID with us," which they may collect "when you visit their site or app or use their services." *Id.* at 8.

Plaintiff's agreement to Meta's Privacy Policy independently defeats his CIPA claims. In *Smith*, the plaintiff claimed Meta used embedded code snippets to "track the pages they visited on the [defendants'] websites." 262 F. Supp. 3d at 948–49. The court dismissed based on plaintiffs' consent, concluding that "Facebook's Data Policy discloses the precise conduct at issue in this case: '*We collect information* when you visit or use *third-party websites* and apps that use our Services.'" *Id.* at 954. The Ninth Circuit affirmed. *Smith v. Facebook, Inc.*, 745 Fed. Appx. 8 (9th Cir. 2018). Plaintiff's claim here fails for the same reason.

**2. California Law Does Not Apply to Plaintiff's Claim.**

Plaintiff cannot state a CIPA claim for another reason: he agreed New York law would apply. As explained above, by using American Express's website, plaintiff "agree[d] to be bound by the Terms of Service." Ex. 3. The Terms of Service state that "Users of [American Express's] Site agree to submit to the laws of the State of New York, USA, and applicable federal law without regard to conflicts of laws principles." Ex. 4; Compl. ¶ 29.

"Under New York law, 'courts will generally enforce choice-of-law clauses.'" *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018). Because plaintiff agreed to the application of New York law with respect to American Express's website, "[i]t follows that [his] claims under California law . . . must be dismissed." *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 220–21 (S.D.N.Y. 2019) (dismissing California claims where the plaintiff agreed his claims would be "governed by . . . the internal laws of the State of New York"); *see*

*also Heinz v. Amazon.com Inc.*, 2024 WL 2091108, at *5 (W.D. Wash. May 8, 2024) (dismissing CIPA claim based on Washington choice of law provision in terms of use).

## II. American Express Cannot Be Held Liable Under an Aiding-and-Abetting Theory.

Recognizing that American Express cannot wiretap data directed to it, plaintiff premises both of his claims on the theory that American Express is aiding and abetting violations of CIPA by Meta. The aiding and abetting theory falls short.

### A. CIPA Section 632 Does Not Authorize Aiding-and-Abetting Liability.

Plaintiff's claim that American Express "aided, employed, agreed, and conspired" with Meta in violation of Section 632 fails as a matter of law because there is no such cause of action. Compl. ¶ 2. "[P]urely statutory" claims rest on a "different foundation" than common law claims, so there can be no aiding and abetting liability absent explicit statutory authorization. *Clarke v. Horany*, 212 Cal. App. 2d 307, 311 (1963); *see also Wolfe v. City of Fremont*, 144 Cal. App. 4th 533, 552 (2006) (no aiding and abetting "in the absence of statutory authority").

Plaintiff does not—and cannot—cite to any language in Section 632 authorizing an aiding-and-abetting theory of liability. And the portion of the statute providing the civil cause of action (Cal. Penal Code 637.2) by its express terms "provide[s] civil damages only against 'the person who committed the violation.'" *Kimmel v. Goland*, 51 Cal. 3d 202, 213 n.9 (Cal. 1990) (quoting Cal. Penal Code 637.2(a)); Compl. ¶ 15. Plaintiff's attempt to invent a cause of action for aiding and abetting should fail as a matter of law.

### B. Plaintiff Fails To State a Claim for Aiding and Abetting Under Section 631.

American Express's alleged conduct also does not meet the standard for aiding-and-abetting liability under Section 631. To state a claim that American Express "aid[ed], agree[d] with, employ[ed], or conspire[d] with" Meta in violation of CIPA Section 631(a), plaintiff must plead that American Express had "knowledge" that Meta's alleged conduct "constitutes a breach

of duty"—in other words, knowledge that Meta's alleged conduct violated CIPA Section 631(a). *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024); *Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *15 (S.D. Cal. Mar. 21, 2024) (same).[15]

That American Express "embedded" software on its website is insufficient alone to allege its knowledge under an aiding-and-abetting theory. *Rodriguez*, 2024 WL 1223485, at *3, 14. Further, plaintiff must plead facts establishing that American Express "knew [Meta] would intercept [communications] for the benefit of a company other than" American Express. *James v. Walt Disney Co.*, 2023 WL 7392285, at *9 (N.D. Cal. Nov. 8, 2023). In other words, plaintiff must plausibly allege that American Express knew both that Meta was intentionally collecting financial information submitted by plaintiff and that Meta was doing so for its own use, not as a service provider to American Express.

Plaintiff's Complaint fails on both counts. As explained above, plaintiff does not plausibly allege that the Meta Pixel on American Express's website was configured to collect financial information submitted in credit card applications, much less that American Express had knowledge of such a configuration. *See* Part I.B.3. American Express cannot be liable for aiding and abetting a purported violation of CIPA when these factual allegations are lacking. *See Esparza*, 2024 WL 559241, at *6 (dismissing CIPA Section 631 aiding-and-abetting claim for failure to plead "knowledge" of third party's "wiretapping . . . in violation of CIPA").

Plaintiff also does not allege—even in conclusory terms—that American Express knew Meta was collecting data for its own use or that American Express configured the Meta Pixel on

[15] As explained above, aiding and abetting liability is not authorized under Section 632. Even if it were, plaintiff's allegations would not state a claim for the same reason his Section 631 theory fails. *See Lexin v. Superior Court*, 47 Cal. 4th, 1050, 1091 (2010) (provisions that "relate to the same person or thing, to the same class of person[s or] things, or have the same purpose or object" are "in pari materia" and must be read in harmony).

its website to permit such use. Thus, "it cannot reasonably be inferred that [American Express] knew [Meta] would intercept for the benefit of a company other than [American Express]." *James*, 2023 WL 7392285, at *9. This requires dismissal of plaintiff's claim. *Id.* (dismissing CIPA aiding and abetting claim).

## III. Plaintiff Fails To Plead a Timely Claim.

Finally, CIPA claims are subject to a one-year statute of limitations. *Brodsky*, 445 F. Supp. 3d at 134. The Complaint was filed on March 29, 2024, but plaintiff alleges only that he submitted a credit card application on American Express's website "in or about March 2023." Compl. ¶ 6. Because plaintiff fails to plead that his application was submitted on the last three days of March 2023, as required to make his claims timely under CIPA, the Complaint should be dismissed. *See Brodsky*, 445 F. Supp. 3d at 134 (dismissing CIPA claim where plaintiffs failed to plead when certain technology purportedly intercepting their communications was activated).

## CONCLUSION

For the foregoing reasons, American Express respectfully requests that the Court dismiss the Complaint with prejudice.

New York, New York
Dated: July 12, 2024

Respectfully submitted,

COVINGTON & BURLING LLP

*<u>/s/ Kathryn E. Cahoy</u>*
Kathryn E. Cahoy
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Tel: 650-632-4700
kcahoy@cov.com

Jordan S. Joachim
The New York Times Building
620 8th Avenue
New York, New York 10018
Tel: 212-841-1000

jjoachim@cov.com

*Attorneys for Defendant American Express Travel Related Services Company, Inc.*