UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIP CAMACHO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

AMERICAN EXPRESS COMPANY,

Defendant.

Case No. 1:24-cv-02408-JPC

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................................ 2

A. The Meta Pixel. ..................................................................................................... 2

B. American Express's Alleged Installation and Use of the Meta Pixel. .................... 3

C. Plaintiff Consented to the Use of the Pixel. ........................................................... 4

D. Plaintiff's American Express Credit Card Application and This Lawsuit. ............. 6

LEGAL STANDARD ................................................................................................. 6

ARGUMENT ............................................................................................................. 7

I. Plaintiff Fails To Plead a Primary CIPA Violation by Meta. ............................................ 9

A. The Complaint Does Not Adequately Allege Meta's Intent. ................................. 9

B. Plaintiff Fails To Plead the Elements of a Section 631(a) Violation. ................... 11

1. The Complaint Does Not Allege That "Contents" of Any "Communications" Were Intercepted. ..................................................... 11

2. The Complaint Fails To Allege That Meta Was a Third Party To the Allegedly Intercepted Communications. ............................................. 14

3. The Complaint Fails To Allege an Interception While "In Transit." ....... 16

C. Plaintiff Fails To Plead the Elements of a Section 632 Violation. ....................... 17

1. The Complaint Fails To Allege the Eavesdropping on or Recording of a "Confidential Communication." ...................................................... 17

2. Section 632 Does Not Encompass Meta's Alleged Conduct. ................... 19

3. Plaintiff's Conclusory Assertion That the Meta Pixel Is a "Device" Should Be Rejected. .................................................................... 20

D. Plaintiff Consented To the Collection at Issue, Which Defeats His Claims. ......... 21

II. American Express Cannot Be Held Liable Under an Aiding-and-Abetting Theory. ........ 23

A. CIPA Section 632 Does Not Authorize Aiding-and-Abetting Liability. .............. 23

B. Plaintiff Fails To State a Claim for Aiding and Abetting Under Section 631 .......... 24

III. Plaintiff Fails To Plead a Timely Claim. .......... 25

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexandre v. Alcon Labs., Inc.*,
2024 WL 623707 (S.D.N.Y. Feb. 14, 2024)....................2

*Am. Civil Liberties Union v. Clapper*,
804 F.3d 617 (2d Cir. 2015)....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6, 20

*Augustine v. Great Wolf Resorts, Inc.*,
2024 WL 3450967 (S.D. Cal. July 18, 2024)....................13

*Azzarmi v. Neubauer*,
2024 WL 4275589 (S.D.N.Y. Sept. 24, 2024)....................5, 22

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)....................10, 11

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....................12, 14, 25

*Byars v. Hot Topic, Inc.*,
2023 WL 2026994 (C.D. Cal. Feb. 14, 2023)....................7, 15

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)....................18

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)....................14, 21

*Clarke v. Horany*,
212 Cal. App. 2d 307 (1963)....................23

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018)....................18

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024)....................7

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. Aug. 28, 2023)....................16

*Crandon v. United States*,
494 U.S. 152 (1990) ....7, 21

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) ....9, 10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....21

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ....20

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) ....24

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ....25

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....19, 22, 23

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....18, 19

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....13, 20

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) ....11

*Hayden v. Paterson*,
594 F.3d 150 (2d Cir. 2010) ....15

*Heiting v. athenahealth, Inc.*,
2024 WL 3761294 (July 29, 2024 C.D. Cal.) ....16

*Heiting v. Taro Pharms. USA, Inc.*,
2024 WL 1626114 (C.D. Cal. Apr. 2, 2024) ....17, 24, 25

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995) ....7

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....18

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) ....13

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 6466195 (N.D. Cal. Oct. 3, 2023)....................9

*Kibler v. N. Inyo Cnty. Loc. Hosp. Dist.*,
39 Cal. 4th 192 (2006)....................20

*Kimmel v. Goland*,
51 Cal. 3d 202 (Cal. 1990)....................23

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024)....................11, 12

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021)....................9

*Lozano v. City of L.A.*,
73 Cal. App. 5th 711 (2022)....................11

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009)....................21

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023)....................17

*Mason v. Mach Zone, Inc.*,
140 F. Supp. 3d 457 (D. Md. 2015)....................20

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................16, 17, 21

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021)....................13

*Mikulsky v. Bloomingdales, LLC*,
2024 WL 337180 (S.D. Cal. Jan. 25, 2024)....................12, 14

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017)....................20, 21

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................18

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)....................5

*Quigley v. Yelp, Inc.*,
2018 WL 7204066 (N.D. Cal. Jan. 22, 2018)....................7

*Ramos v. The Gap, Inc.*,
2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ....................12, 14

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ....................11

*Rodriguez v. Ford Motor Co.*,
2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) ....................24

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (Ct. App. 1975)....................14

*Roth v. CitiMortgage Inc.*,
756 F.3d 178 (2d Cir. 2014)....................6

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ....................18

*Silver v. Stripe, Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................22, 23

*Sinclair v. Ziff Davis, LLC*,
454 F. Supp. 3d 342 (S.D.N.Y. 2020)....................5

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................22

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) ....................11

*Vita v. New England Baptist Hosp.*,
2024 WL 4558621 (Mass. Oct 24, 2024) ....................19

*Walton v. Hadley*,
2014 WL 3585525 (S.D.N.Y. July 10, 2014) ....................16

*Wolfe v. City of Fremont*,
144 Cal. App. 4th 533 (2006) ....................23

*Wright v. Green Tree Servicing LLC*,
2016 WL 4098404 (S.D.N.Y. July 25, 2016) ....................5

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ....................15

*Yockey v. Salesforce, Inc.*,
2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) ....................21

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................12

**Statutes**

15 U.S.C. § 6801. ....................8

Cal. Civ. Code § 1798.100 ....................8

Cal. Civ. Code § 1798.140 ....................3

Cal. Fin. Code § 4056. ....................8

Cal. Pen. Code § 631 .................... *passim*

Cal. Pen. Code § 632 .................... *passim*

Cal. Pen. Code § 632.5 ....................8

Cal. Pen. Code § 637.2 ....................23

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ....................21

Merriam-Webster Dictionary (1978) ....................21

**PRELIMINARY STATEMENT**

This lawsuit is one of many across the country attempting to repurpose decades-old criminal wiretap laws to challenge common internet technologies in pursuit of windfall statutory damages. Plaintiff's target in this case is American Express Travel Related Services Company, Inc. ("American Express") (incorrectly named as American Express Company), which plaintiff alleges installed the Meta (f/k/a Facebook) Pixel—a piece of software code commonly used on webpages—on its website.

Plaintiff's original complaint asserted that American Express installed the Meta Pixel on its website to allow Meta to collect detailed financial information plaintiff submitted in an online credit card application, including his annual income and social security number. After American Express's motion to dismiss demonstrated that this theory was unsupported by any factual allegations and failed to state a claim as a matter of law, plaintiff abandoned it. In a full retreat, plaintiff's Amended Complaint withdraws those allegations and instead asserts that American Express allowed Meta to learn "the fact that he applied for an American Express credit card." But plaintiff's new theory remains lacking in factual and legal support.

Despite having an opportunity to amend and identify facts supporting his claim, plaintiff still fails to plausibly plead that Meta violated California Invasion of Privacy Act ("CIPA") Section 631(a) and Section 632, let alone that American Express aided and abetted such violations. Plaintiff does not adequately plead that Meta acted "intentionally" or "willfully," that the "contents" of any "communications" were intercepted, recorded, or eavesdropped on, or that the Meta Pixel is an "electronic amplifying or recording device." Moreover, plaintiff cannot avoid that he consented to the collection of his data, defeating his claim.

Even if plaintiff could allege a predicate CIPA violation by Meta, he independently fails to plead an aiding-and-abetting claim against American Express. Plaintiff continues to invoke

Section 632 even though no aiding-and-abetting liability exists under that provision. And like the original complaint, the Amended Complaint pleads no factual allegations showing that American Express had the requisite knowledge for aiding-and-abetting liability.

## BACKGROUND[1]

### A. The Meta Pixel.

The Meta Pixel is a free and publicly available "piece of code" that can be installed on a webpage and configured to measure certain "events," *i.e.*, defined actions taken by visitors on the page.[2] For example, the Pixel can be configured to identify the webpages a visitor accesses and the buttons they click.[3] What specific events or information the Meta Pixel can transmit depends on how it is configured on a given website.[4]

How Meta processes and uses information it receives depends on how the Pixel is configured. For example, Meta offers, and website operators can enable, a limited data use ("LDU") option to limit data processing for website visitors in specific states, including California.[5] Enabling LDU for website visitors in California limits how Meta uses information from these users, including by requiring Meta to act as a "Service Provider" and preventing Meta

---

[1] By referencing the Complaint's allegations in connection with its motion to dismiss, American Express is not admitting their truth.

[2] Amended Complaint ("AC") ¶ 20; Meta Pixel, https://developers.facebook.com/docs/meta-pixel/ (last accessed Oct. 28, 2024). The Court may take judicial notice of the existence of documents appearing on Meta's Developer's Website and Business Help Center Website as they are "publicly available" and there is no dispute as to their authenticity. *Alexandre v. Alcon Labs., Inc.*, 2024 WL 623707, at *3 (S.D.N.Y. Feb. 14, 2024).

[3] AC ¶ 23; *see also* Meta Pixel, https://developers.facebook.com/docs/meta-pixel/.

[4] *See* Conversion Tracking, https://developers.facebook.com/docs/meta-pixel/implementation/conversion-tracking (explaining the different ways the Meta Pixel can be configured to track certain types of events) (last accessed Oct. 28, 2024).

[5] Data Processing Options for US Users, https://developers.facebook.com/docs/marketing-apis/data-processing-options/ (last accessed Oct. 24, 2024); State-Specific Terms, https://www.facebook.com/legal/terms/state-specific (last accessed Oct. 28, 2024).

from selling or sharing that information, combining it with personal information it receives from other sources, or using it for any purposes other than those permitted for "Service Providers" under the California Consumer Privacy Act.[6]

**B. American Express's Alleged Installation and Use of the Meta Pixel.**

American Express is a banking and payment card company based in New York, New York. AC ¶ 7. American Express offers various credit cards that individuals can apply for on its website (americanexpress.com). *Id.* ¶¶ 6–7.

Plaintiff alleges that American Express installed the Meta Pixel on the webpage a user accesses when applying for a credit card on americanexpress.com. *Id.* ¶ 24. He contends generally that the Pixel tracks the "URLs visited and text typed into text boxes or fields, when Website users have progressed through portions of the Website (which requires affirmative button presses on the part of Website users)," as well as "many other" unspecified "items." *Id.* ¶ 23. Plaintiff further claims that the Pixel collects "nine different Facebook cookies" from americanexpress.com, including one with visitors' Facebook IDs. *Id.* ¶ 25. Plaintiff asserts that the Pixel "transmits" to Meta these Facebook cookies and unspecified event data, including "the fact that [a] particular user applied for an American Express credit card." *Id.* ¶ 26.

Absent from the Complaint are any allegations explaining what data is purportedly captured by the Pixel that reveals the fact of a credit card application. Unlike the original complaint, the Amended Complaint does not allege that the Pixel collected the information plaintiff submitted with his credit card application, nor could he: the Meta Pixel does not capture

[6] Data Processing Options for US Users, https://developers.facebook.com/docs/marketing-apis/data-processing-options/; State-Specific Terms, https://www.facebook.com/legal/terms/state-specific. "Service Provider" is interpreted "in accordance with" applicable "US Privacy Laws," including the California Privacy Rights Act. *Id.*; *see* Cal. Civ. Code § 1798.140(ag)(1) (defining "Service Provider").

text typed into form fields unless specifically configured to do so.[7] Though plaintiff repeatedly asserts that the Pixel collects and transmits "the fact that he [or another user] applied for an American Express credit card," *id.* ¶¶ 6, 26, 34–35, 69, he does not allege that this fact is itself "event data" tracked by the Pixel nor does he identify what particular events the Pixel tracked that allegedly revealed this information.

Plaintiff also fails to plead any facts supporting his conclusory assertion that Meta uses the information collected by the Pixel "for purposes other than recording it and conveying it to" American Express. *Id.* ¶ 32. Plaintiff asserts that Meta uses the information it collects for "contact information matching," "measurement and analytics services," "ad targeting," "commercial and transactional messages," "ad delivery improvement," "feature and content personalization," and "product improvement, provision, and securement." *Id.* But he does not explain what these terms mean or allege any facts indicating that Meta could not or does not perform these activities only as a service provider on American Express's behalf. Nor does plaintiff allege how the Pixel on American Express's website was configured, including whether LDU was enabled, which would prevent Meta from retaining or using data it collects for its own purposes. *See* Part A, *supra*.

### C. Plaintiff Consented to the Use of the Pixel.

Plaintiff alleges that "[i]n or about March 2023," he applied for an American Express credit card on American Express's website. AC ¶ 6. As admitted in the original complaint and conspicuously deleted from the Amended Complaint, by applying for an American Express credit card, plaintiff was required to and did agree to American Express's Terms and

---

[7] *See* Meta Pixel, https://developers.facebook.com/docs/meta-pixel/ ("We don't capture field values unless you include them as part of Advanced Matching or optional values.").

Conditions.[8] ECF No. 1 ¶ 29. These Terms and Conditions state: "You authorize us and our affiliates and subsidiaries to share information we have about you at any time for marketing and administrative purposes as permitted by law." *See, e.g.*, Ex. 1.[9] The Terms and Conditions also incorporate by reference and link to the American Express Privacy Statement. *Id.*; Ex. 2.

The American Express website further informs users at the bottom of each page: "All users of our online services are subject to our Privacy Statement and agree to be bound by the Terms of Service. Please review." Ex. 3. The website includes directly above that hyperlinks to the Terms of Service and a webpage titled "Privacy Center," *id.*, which includes FAQs about privacy and a link to American Express's Privacy Statement.

The Privacy Statement provides users with detailed information regarding what data is collected on the site, by whom, and for what purposes. For example, it informs users that "We (and our Service Providers or Third-Party Ad-Servers) may collect information using Cookies and Similar Technologies," including "web beacons, *pixels*, gifs, tags, and device ID technology." Ex. 2 (emphasis added).

---

[8] The Court may credit this admission even though plaintiff omitted it from the Amended Complaint. When, as here, "a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." *Azzarmi v. Neubauer*, 2024 WL 4275589, at *16 (S.D.N.Y. Sept. 24, 2024); *see also Wright v. Green Tree Servicing LLC*, 2016 WL 4098404, at *1 n.1 (S.D.N.Y. July 25, 2016) (noting that, regardless of whether an earlier complaint is contradicted by a later complaint, the Court has discretion to rely on the earlier complaint's admissions, and collecting cases).

[9] References to "Ex." refer to the exhibits attached to the Declaration of Jordan S. Joachim filed with this motion. The Court may consider all the terms to which plaintiff agreed, including the American Express Terms and Conditions, a version of which is included as Ex. 1. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (courts may consider documents not referenced in the complaint "when the material considered is a 'contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint."); *Sinclair v. Ziff Davis, LLC*, 454 F. Supp. 3d 342, 344 n.2 (S.D.N.Y. 2020) (taking judicial notice of "Instagram's contemporaneous Terms of Use and Privacy Policy, both of which are publicly available online").

### D. Plaintiff's American Express Credit Card Application and This Lawsuit.

Plaintiff is a California resident who alleges that he applied for a credit card on americanexpress.com "[i]n or about March 2023." AC ¶ 6. Plaintiff filed this action on March 29, 2024. Plaintiff's original complaint asserted that the Pixel on American Express's website sent to Meta "sensitive" financial information, including his social security number and income. ECF No. 1 ¶ 6. After American Express moved to dismiss and called into question the factual basis for those allegations, plaintiff elected to amend the complaint rather than oppose. The Amended Complaint backtracks from plaintiff's original theory and instead alleges that American Express allowed the Pixel to "send the fact that he applied for an American Express credit card" to Meta. AC ¶ 6.

## LEGAL STANDARD

A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible only when it is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In deciding a Rule 12(b)(6) motion, the Court may consider any documents "incorporated in [the complaint] by reference," "matters of which judicial notice may be taken," and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014). The Court need not accept the truth of allegations that are contradicted by materials incorporated by reference or

subject to judicial notice or by more specific allegations in the complaint. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094–95 (2d Cir. 1995).

**ARGUMENT**

Although plaintiff's claims are civil in nature, they derive from two sections of a criminal statute that must be construed narrowly, with any ambiguity resolved in American Express's favor. *Crandon v. United States*, 494 U.S. 152, 158 (1990) (in a civil suit where "the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage"). This "'time-honored interpretive guideline' serves to ensure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability." *Id.*

CIPA Section 631(a) prohibits: (1) "intentional wiretapping" of a "telegraph or telephone wire, line, cable, or instrument"; (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire"; and (3) "attempting to use or communicate information obtained" by either of the two previous activities." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 998 (N.D. Cal. 2024).[10] It further prohibits aiding and abetting this conduct. *Id.* at 998.

Section 632, enacted in 1967, was "designed to combat illicit recording of telephonic communications." *Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018). It imposes liability on any party who "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop

[10] Courts have limited the "intentional wiretapping" clause of Section 631(a) to instances of "telephonic wiretapping" and hold this clause "does not apply to the context of the internet." *Byars v. Hot Topic, Inc.*,656 F. Supp. 3d 1051, 1065 n.8 (C.D. Cal. 2023) (collecting cases). Plaintiff thus does not and cannot assert a claim under this clause. *See* AC ¶¶ 58–59.

upon or record" that communication. Cal. Pen. Code § 632(a). Unlike Section 631, Section 632 does not authorize aiding-and-abetting liability. *Compare id. with* Cal. Pen. Code § 631(a).

The California legislature has amended CIPA over the years to address new advances in technology, including cellular telephones, Cal. Pen. Code § 632.5 (1985), body-worn cameras, § 633.02 (2016), and confidential health care communications on the Internet, § 632.01(a)(1) (2016). But it has not amended CIPA to address data collection on Internet websites more generally. Instead, the legislature has passed various sector-specific and comprehensive privacy frameworks to govern the collection, sale, and use of certain consumer information by companies operating in California, including the California Consumer Privacy Act and the California Privacy Rights Act (collectively, the "CCPA"). *See* Cal. Civ. Code § 1798.100 *et seq*. The CCPA complements other privacy statutes, such as the Gramm-Leach-Bliley Act and the California Financial Information Privacy Act, which impose certain limitations on how financial institutions (like American Express) disclose consumers' nonpublic personal information. *See* 15 U.S.C. § 6801 *et seq.*; Cal. Fin. Code § 4056 *et seq.* Plaintiff does not and cannot claim that American Express violated any of these laws, but instead seeks to shoehorn his claims into the decades-old criminal wiretapping statute: CIPA.

CIPA does not cover the alleged conduct at issue here for multiple reasons.

*First*, plaintiff premises his claims against American Express on a theory that American Express aided and abetted a CIPA violation by Meta, but he has not plausibly alleged any underlying violation of Section 631(a) or 632 by Meta. He fails to plead Meta's intent to violate either section. And he fails to plead the other requisite elements of a claim under either Section 631(a) or 632. Moreover, plaintiff's consent to the use of pixel technology defeats his claims.

*Second*, even if plaintiff could plausibly allege a predicate violation, Section 632 does not contain a provision for aiding and abetting at all, so that claim cannot proceed as a matter of law. And plaintiff does not allege that American Express had the necessary knowledge or intent to support an aiding-and-abetting claim under Section 631(a).

*Finally*, plaintiff fails to plead a timely claim, as he does not allege that he submitted a credit card application within one year of filing this action.

## I. Plaintiff Fails To Plead a Primary CIPA Violation by Meta.

Plaintiff fails to plead an underlying predicate violation of CIPA Section 631(a) or Section 632 by Meta, which requires dismissal of his aiding-and-abetting claims.

### A. The Complaint Does Not Adequately Allege Meta's Intent.

To allege an underlying violation of CIPA, plaintiff must plead facts establishing that Meta willfully or intentionally intercepted his communications. *See* Cal. Pen. Code § 631(a) (prohibiting willful conduct); Cal. Pen. Code § 632(a) (prohibiting intentional conduct). CIPA imposes a "higher intent requirement" than other wiretap laws. *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021). Plaintiff must plead more than "mere awareness that an interception might occur" or "that information is likely being transmitted." *Doe I v. Google LLC*, 2024 WL 3490744, at *3, 4 (N.D. Cal. July 22, 2024). To state a claim, plaintiff must plausibly allege that Meta had "the 'purpose or desire' of recording the communication" at issue or had "'knowledge to a substantial certainty' the communication [would] be recorded." *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 6466195, at *4 (N.D. Cal. Oct. 3, 2023) (applying this standard to Section 631(a)); *Lopez*, 519 F. Supp. 3d at 689 (same for Section 632). Further, under Section 632, plaintiff must plead Meta's "intent to intercept *confidential* communications, rather than communications generally." *Lopez*, 519 F. Supp. 3d at 689 (emphasis added).

Plaintiff has not pleaded any facts showing that Meta willfully or intentionally intercepted or recorded plaintiff's communications. To the contrary, the facts alleged in the Complaint establish that Meta had *no* intention or desire to receive the type of information plaintiff asserts was captured. For example, plaintiff alleges that Meta stated that it "does not 'want websites or apps sending us certain restricted information about people,'" including "any information defined as sensitive under applicable laws, regulations and applicable industry guidelines." AC ¶ 43. In addition, Meta's Business Tool Terms, which are quoted in the original complaint and incorporated by reference via Meta's Terms of Service, require Pixel users like American Express to "represent and warrant" that they will not share with Meta "financial information or other categories of sensitive information." Ex. 4 ¶ 1(h); ECF No. 1 ¶ 24. Accordingly, plaintiff's allegations "indicate that Meta either had no intention of receiving the data at issue or had some alternative *mens rea* not rising to the level of intentionality." *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024); *see Doe I*, 2024 WL 3490744, at *6 (dismissing Section 631(a) and 632 claims where "the complaint and incorporated materials stand for the proposition that [the defendant] does not want to receive [confidential] information and has instructed providers not to send it.").

Plaintiff's conclusory assertion that Meta allegedly designed the Meta Pixel "for the express purpose of collecting individual user data from websites," AC ¶ 33, does not alter this conclusion. Plaintiff pleads no facts suggesting that Meta knew or believed American Express had configured the Pixel to violate Meta's policies (and, to be clear, it did not). The mere fact that Meta provided a generally accessible tool that other companies can incorporate into their websites and use to transmit data is insufficient to show it acted intentionally or willfully. *See Doe I*, 2024 WL 3490744, at *6 ("[E]ven if some [confidential] information is inadvertently

sent" using the Google Pixel, "the plaintiffs fail to plausibly allege Google is intentionally reading or learning the contents of the plaintiffs'" private communications); *Lozano v. City of L.A.*, 73 Cal. App. 5th 711, 728 (2022) (complaint failed to allege intent where the defendant "understood it was deploying recording devices that *might* happen to record a confidential communication—not that [it] intended to record those communications").

**B. Plaintiff Fails To Plead the Elements of a Section 631(a) Violation.**

To state a predicate violation under Section 631(a), plaintiff also must allege that Meta was a third party that secretly learned "the contents or meaning of" a communication while "in transit over a wire."[11] *Tavernetti v. Super. Ct.*, 583 P.3d 737, 740 n.1, 741 (Cal. 1978); *Ribas v. Clark*, 696 P.2d 637, 639–40 (Cal. 1985). As explained below, plaintiff fails to plead (1) an interception of "contents" of a "communication," (2) that Meta acted as a third party within the meaning of the statute, as opposed to a service provider for American Express, and (3) that any interception occurred while "in transit." *See B.K.*, 2024 WL 1343305, at *7 (dismissing Section 631(a) claim where plaintiffs "failed to establish a predicate CIPA violation by Meta").

**1. The Complaint Does Not Allege That "Contents" of Any "Communications" Were Intercepted.**

Plaintiff has not plausibly alleged that Meta intercepted a "communication," much less learned the "contents" of any such communications. While CIPA does not define "communication," California courts interpret the term as connoting "a singular conversation or exchange shared between two or more participants." *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024); *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 607 (2020) (same).

---

[11] Plaintiff's claim that Meta "used or attempted to use the communications intercepted by its" Pixel, AC ¶ 59, is necessarily dependent on, and derivative of, his claim that Meta unlawfully intercepted his communications. Consequently, plaintiff's failure to allege that his communications were intercepted also defeats his use claim.

"Contents" under Section 631(a) "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (similar). In contrast, record information includes "interactions" that are tracked on a website, such as "button clicks, mouse movements, scrolling, resizing … key presses, page navigation, changes to visual elements in the browsers," and "network requests." *Mikulsky v. Bloomingdales, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024). Record information also includes information about who visits a website, such as Facebook IDs and browser identifiers. *Zynga*, 750 F.3d at 1107; *see also Am. Civ. Liberties Union v. Clapper*, 804 F.3d 617, 619 (2d Cir. 2015) ("[D]etails *about* the call, such as … the phone number from which the call was made" are not "the contents of a telephone call.").

Plaintiff's allegations that the Pixel captured "the fact that he applied for an American Express credit card," AC ¶¶ 6, 26, 34—without alleging what data he sent or was collected by the Pixel—does not plausibly plead an interception or reading of a "communication." The fact that plaintiff applied for a credit card is not a communication or "singular conversation or exchange," *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13, but rather a fact that plaintiff contends Meta was able to "obtain" by analyzing a "combination of" unspecified "event data" and information from cookies on plaintiff's browser, AC ¶ 29. Plaintiff's failure to allege "with any level of specificity" the actual communications he allegedly made to American Express that purportedly allowed Meta to learn this fact dooms his claims. *Ramos v. The Gap, Inc.*, 2024 WL 4351868, at *4–5 (N.D. Cal. Sept. 30, 2024) (dismissing CIPA 631(a) claim where plaintiff alleged that third party received "the entire contents of the Emails" but "d[id] not explain how

this occurs"); *see Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024) (dismissing CIPA claims where plaintiff's allegations "fail to show *communications* between Plaintiff and [the defendant]"); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) (dismissing CIPA claims where plaintiffs' allegations were "far too conclusory and speculative" and prevented the Court from determining exactly what communications and data were alleged to be collected).

Plaintiff also does not allege that any "contents" of a communication were intercepted. Just like the fact of a credit card application does not constitute a "communication," it also does not constitute the "contents" of a communication. At most, it would reveal that an application was made, but it reveals nothing about the substance of any communication. The fact of an application being submitted, for example by clicking a button, is thus "record information," not contents. Courts have dismissed Section 631 claims based on similar allegations that software collected data about how a plaintiff "engaged" with certain features on a website because that data is not "contents." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558, at *8 (S.D. Cal. Sept. 30, 2024); *see also McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021) (data showing "when and how often" a phone user "opens and runs" certain apps "and the amount of time spent on the apps" does not constitute "contents" under CIPA). The same logic requires dismissal of plaintiff's claim here.

Nor does plaintiff allege any other "contents" were transmitted to Meta by the Pixel. Notably, the Amended Complaint omits prior allegations that the form fields from plaintiff's card application—such as his income source and social security number—were transmitted to

Meta.[12] To the extent plaintiff's new theory is that the Pixel captures event data purportedly revealing the fact that he applied for a credit card on American Express's website (*e.g.*, "keystrokes, mouse clicks, pages viewed … the date and time of the visit, the duration of the visit"), it is well established that this kind of data is not contents. *Mikulsky*, 713 F. Supp. 3d at 838, 845; *see also Ramos,* 2024 WL 4351868, at *4 ("[T]ime, date, device type, [and the plaintiff's] engagement with" an email, including "his clicks on URL links" do not constitute "contents").

Likewise, Facebook IDs are not contents, and they do not become contents if combined with other types of information. *See Brodsky*, 445 F. Supp. 3d at 127 (usernames and passwords, even when submitted together, are not "contents" of a communication); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (rejecting the argument that by transmitting "*both* a user name and password together, a substantive communication" is created and that "the user's identity and a request for access" to software is the "contents" of that communication).

**2. The Complaint Fails To Allege That Meta Was a Third Party To the Allegedly Intercepted Communications.**

Section 631(a) prohibits "listen[ing] secretly to what is said in private," but courts have recognized that "only a third party can listen secretly to a private conversation." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975). A participant to a conversation consequently cannot be liable under Section 631(a) for wiretapping a communication to itself even when using a tool like a tape recorder to do so. *Id.* Likewise, if a party uses a digital tool in the form of a service provider or vendor acting as an extension of the party, the service provider falls within this

[12] Nor could plaintiff make such an allegation. By default, the Meta Pixel does not capture field values (*e.g.*, information users enter into form fields). *See* Meta Pixel, https://developers.facebook.com/docs/meta-pixel/ ("We don't capture field values unless you include them as part of Advanced Matching or optional values.").

exception and cannot be "secretly" intercepting or listening to the communication. *See Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (dismissing Section 631(a) claim where the defendant was "a vendor that provides a software service that allows its clients to monitor their website traffic"); *Byars*, 656 F. Supp. 3d at 1068 (holding that third-party vendor was an "extension" of the defendant's website and not a "third-party eavesdropper" and dismissing Section 631(a) claim).

Plaintiff fails to plausibly allege that Meta was a third party, rather than a service provider, to American Express because he does not plead any facts showing Meta could or did use data it collected from American Express for its own benefit. For example, despite listing a variety of ways that Meta can purportedly use the data it collects, he fails to allege which of these activities, if any, Meta can or does do for its own purposes, rather than for American Express's benefit. *See* AC ¶ 32. And though plaintiff alleges in a conclusory fashion that Meta "had the capability to use the [allegedly] wiretapped information for its own purposes," *id.* ¶ 57, he offers no well-pleaded facts to support this assertion, let alone facts establishing that Meta actually used data from American Express for its own purposes.

On top of that, plaintiff still fails to allege any facts explaining how the Pixel on American Express's website was configured, including whether LDU mode was enabled. LDU mode requires Meta to act only as a service provider with respect to any covered data it collects so falls squarely within the party exception to CIPA.[13] Plaintiff's failure to allege any facts about the LDU configuration means his claims fall short of the plausibility standard, particularly here where an "obvious alternative explanation" exists. *Hayden v. Paterson*, 594 F.3d 150, 167,

[13] Data Processing Options for US Users, https://developers.facebook.com/docs/marketing-apis/data-processing-options/; State-Specific Terms, https://www.facebook.com/legal/terms/state-specific.

169 (2d Cir. 2010); *see Walton v. Hadley*, 2014 WL 3585525, at *4 (S.D.N.Y. July 10, 2014) (dismissing counterclaim where allegations made claim "merely conceivable" and did not allow the court to "draw a non-speculative inference" that party was entitled to relief).

In light of these deficiencies, plaintiff's allegations "are too general and conclusory to support a reasonable inference that [Meta] had the capability to use the [allegedly intercepted] communications for" its own purposes, and thus he fails to state a claim. *Heiting v. athenahealth, Inc.*, 2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024). Moreover, plaintiff's allegations that "merely describe the capabilities" of the Meta Pixel without alleging how it "was configured" on American Express's website do not suffice. *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 69–70 (W.D. Pa. 2023).

**3. The Complaint Fails To Allege an Interception While "In Transit."**

To state a claim under Section 631(a), plaintiff must also allege facts showing that Meta read or learned the contents of a communication while it was "in transit." Cal. Pen. Code § 631(a). Plaintiff's claim fails because he does not allege *when* any relevant communications were purportedly read or learned by Meta, so he necessarily does not allege that they were read or learned while "in transit."

To meet the in transit requirement, plaintiff must allege facts showing that Meta "read one of his communications … before it reached its intended recipient"—*i.e.*, before American Express received the request from plaintiff. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021). Plaintiff's allegations fall well short. He alleges generally that, when a user accesses a website with the Pixel installed by sending a "GET request," the Pixel "directs the user's browser to simultaneously send a separate message to" Meta with unspecified data "that the Pixel collects." AC ¶ 20. But plaintiff does not allege a communication from him to American Express that was directed in this way, much less a communication from him revealing

the fact he applied for a credit card. And even assuming that there was such a communication, plaintiff does not allege *when* Meta purportedly read that communication. The Complaint thus fails to allege that Meta read a relevant communication "before it reached" American Express. *Mastel*, 549 F. Supp. at 1137.

Indeed, the Complaint suggests that an interception "in transit" is implausible: Meta could only learn that plaintiff had "applied for an American Express credit card," AC ¶ 6, *after* plaintiff navigated to American Express's website and *after* he applied for a card, not while any communications reflecting these activities were "in transit." *See Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023) (accessing a recording and transcript of a chat-box session after the chat has concluded does not constitute an interception "in transit" under CIPA). Because plaintiff's vague allegations "merely restate the statutory language" while requiring "the Court to determine how the software code embedded on Defendant's website works," his claim should be dismissed. *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 1626114, at *9 (C.D. Cal. Apr. 2, 2024).

**C. Plaintiff Fails To Plead the Elements of a Section 632 Violation.**

Plaintiff also fails to plead the elements of an unlawful interception under CIPA Section 632, which prohibits the "intentional[]" use of an "electronic amplifying or recording device" to eavesdrop upon or record a "confidential communication." Cal. Penal Code § 632(a). Plaintiff fails to plausibly allege with respect to Meta: (1) a "confidential communication," (2) an "eavesdrop" or "recording," and (3) use of an "electronic amplifying or recording device."

**1. The Complaint Fails To Allege the Eavesdropping on or Recording of a "Confidential Communication."**

Plaintiff does not plead facts that establish an eavesdrop or recording of "confidential communication[s]." California courts generally presume that "[i]nternet-based communications

are not 'confidential' within the meaning of section 632." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051–52 (N.D. Cal. 2018); *see Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (same). That is because internet communications are "by their very nature recorded on the computer of at least the recipient, who may then easily transmit the communication to anyone else who has access to the internet." *In re Google Inc.*, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013); *accord In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016) ("Most of us understand that what we do on the Internet is not completely private.").

Further, California courts interpret Section 632 as protecting only "the content of the communication" from being eavesdropped upon or recorded; "non-content-based conduct coincident to the communication" is not confidential and thus falls outside the scope of Section 632. *People v. Drennan*, 84 Cal. App. 4th 1349, 1358 (2000) ("The language of [Section 632] admits of no other construction than the Legislature intended to address the interception and recording of sound-based or symbol-based communications.").

As explained above in Part I.B.1, the Complaint fails to allege any communications the Meta Pixel purportedly collected. At most, the Complaint asserts that the Meta Pixel collected unspecified event data (such as button clicks) and Facebook ID information for users who were logged into their Facebook accounts when they accessed American Express's website. *See* AC ¶ 26. These are not confidential communications under the meaning of the statute, and they cannot support a claim under Section 632. *See, e.g.*, *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (dismissing Section 632 claim alleging collection of browsing data and unique user identifiers because such data is not sufficiently personal or private); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) ("[T]he Court is hard

pressed to conclude that basic contact information, including one's email address, phone number, or Facebook or Zynga username, is private information.").

For the same reason, the Complaint also does not allege any contents of a confidential communication that can be eavesdropped upon or recorded. Rather, plaintiff asserts only that the Pixel collected "non-content-based conduct," which is not encompassed by Section 632. *Drennan*, 84 Cal. App. 4th at 1359 (taking photographs of others "carrying on a confidential conversation does not constitute the recording of a confidential communication" under Section 632); *see also Vita v. New England Baptist Hosp.*, 2024 WL 4558621, at *10 (Mass. Oct 24, 2024) (rejecting wiretapping claim under Massachusetts law and holding that "[b]rowsing and accessing the information published on a website is significantly different from having a conversation or sending a message to another person" and does not fall within the plain meaning of a "communication").

**2. Section 632 Does Not Encompass Meta's Alleged Conduct.**

Plaintiff also does not allege "eavesdrop[ping]" or "record[ing]" of a communication within the meaning of CIPA Section 632. Courts in California "interpret 'eavesdrop,' as used in section 632, to refer to a third party secretly listening to a conversation between two other parties." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020). As explained in Part I.B.1, plaintiff does not plead any facts showing a "communication" or "conversation." And as explained in Part I.B.2, the Complaint lacks any well-pleaded facts showing that Meta was acting as a third party, as opposed to a service provider or vendor.

In addition, Section 632 does not apply where the parties "reasonably expect that the communication may be overheard or recorded." Cal. Pen. Code § 632(c). To the extent there is any communication here, a user submitting an online credit card application reasonably expects that his application, by its very nature, will be "recorded." *See In re Google Inc.*, 2013 WL

5423918, at *23 (dismissing Section 632 claim and noting that "[u]nlike phone conversations, email services are by their very nature recorded on the computer of at least the recipient"). And as discussed below, American Express disclosed to users the data collection practices for its website, giving them a reasonable expectation of those practices.

#### 3. Plaintiff's Conclusory Assertion That the Meta Pixel Is a "Device" Should Be Rejected.

The Complaint also fails to allege the use of a "device" to allegedly eavesdrop or record plaintiff's communications. The Complaint defines the Meta Pixel as a "piece of code" that can be "integrate[d] into" a website. AC ¶ 20. Despite that definition, the Complaint later asserts that the Meta Pixel is an "electronic amplifying or recording device." *Id.* ¶¶ 67, 69. This "threadbare recital[]" "do[es] not suffice" to state this element of the statute, *Iqbal*, 556 U.S. at 678, and it is contrary to the "ordinary and usual meaning" of the term "device" under CIPA, *Kibler v. N. Inyo Cnty. Loc. Hosp. Dist.*, 138 P.3d 193, 199 (Cal. 2006).

The "most natural reading" of the term "device" "calls to mind" something physical like "a piece of equipment"—not intangible software code on a website. *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 462–63 (D. Md. 2015). Consistent with this reading, courts have held that "[s]oftware like Google Maps, Chrome, etc., are not 'devices' within the meaning of CIPA because they are not 'equipment.'" *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 193; *see also Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) ("Because software does not constitute a 'device' under the CIPA, Plaintiff's § 632 claim against [the defendant] is deficient."); *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764,

at *5 (N.D. Cal. Dec. 14, 2017) (software is not a device under CIPA); *Mastel*, 549 F. Supp. 3d at 1135 (declining to interpret "telephone device" to include the iOS Pasteboard).[14]

This is supported by dictionary definitions of the term "device." These definitions show that a "piece of code" installed on American Express's website, AC ¶ 20, lacks the requisite physical dimension of a "mechanical invention" or "machine," let alone one designed with the special purpose of eavesdropping on confidential communications, *see Moreno*, 2017 WL 6387764, at *5 (a "device" is defined as "a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment"); Merriam-Webster Dictionary (1978) (defining "device" as "[a] piece of equipment or a mechanism for a special purpose"); Black's Law Dictionary (11th ed. 2019) (defining "device" as "[a] mechanical invention" that "may be an apparatus or an article of manufacture" and also directs readers to the term "machine" which is defined as "consisting of fixed and moving parts"). To the extent there is any ambiguity in this term, it should be construed in American Express's favor because Section 632, as a penal statute, is subject to the rule of lenity. *Crandon*, 494 U.S. at 158; *see also LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (rule of lenity applies to civil claim under penal statute).

### D. Plaintiff Consented To the Collection at Issue, Which Defeats His Claims.

CIPA Section 631(a) and 632 prohibit only wiretapping and eavesdropping "without the consent of all parties." Cal. Pen. Code, §§ 631(a), 632(a). Plaintiff "has the burden to prove that

[14] Other courts have reached a different conclusion, but they largely have done so in reliance on a decision that interpreted the definition of "device" under the federal Wiretap Act, not CIPA, which contains different language than the Wiretap Act. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) (finding that Meta's pixel software is a "device" in reliance on *In re Carrier IQ, Inc.*,78 F. Supp. 3d 1051 (N.D. Cal. 2015) (analyzing meaning of "device" under the federal Wiretap Act)); *see also Yockey v. Salesforce, Inc.*, 2024 WL 3875785, at *7–8 (N.D. Cal. Aug. 16, 2024) (holding that software is a "device" in reliance on the federal Wiretap Act's definition).

the defendant lacked consent." *Google Assistant*, 457 F. Supp. 3d at 828. Consent is a complete bar to liability and applies where the plaintiff agreed to terms or privacy policies that "disclose[d] the precise conduct at issue." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd.* 745 Fed. App'x 8 (9th Cir. 2018).

Plaintiff fails to meet his burden of pleading a lack of consent. As explained above in Part C, plaintiff consented to the collection of his data by agreeing to the American Express Terms and Conditions and Privacy Statement. Plaintiff admitted in the original complaint he was required to agree to the Terms and Conditions to submit a credit card application, a fact he cannot now avoid by "blatantly chang[ing] his statement of the facts in order to respond to [American Express's] motion to dismiss." *Azzarmi*, 2024 WL 4275589, at *16; ECF No. 1 ¶ 29. Despite his burden to plead a lack of consent, plaintiff alleges no facts in the Amended Complaint about his consent (or lack thereof) to these terms.

The Terms and Conditions authorize American Express and its affiliates "to share information we have about you at any time for marketing and administrative purposes as permitted by law." Ex. 1. The Terms and Conditions also incorporate by reference the American Express Privacy Statement, which expressly discloses that American Express and "Service Providers" (including "any vendor, third party and/or company that performs business operations on our behalf") may collect information "through Cookies and Similar Technologies," including "web beacons, *pixels*, gifs, and tags." Ex. 2 (emphasis added). Plaintiff also consented to the Privacy Statement by using American Express's website. *See* Part C, *supra*.

Plaintiff's agreement to the American Express Terms and Conditions and Privacy Statement defeats his CIPA claims. For example, in *Silver v. Stripe, Inc.*, the court held that a privacy policy stating that the defendant's "partners" may "'use various technologies' to 'collect

information about your online activity over time and across different websites or online services'" was sufficiently specific to establish the plaintiffs' consent to the collection of their data by a third party payment processor. 2021 WL 3191752, at *4–5 (N.D. Cal. July 28, 2021). Like in *Silver*, plaintiff here "consented to the collection of the data at-issue," and his claims should be dismissed. *Id.* at *5. These disclosures show that plaintiff fails to plausibly allege a lack of consent, as required to plead a CIPA claim. *Google Assistant*, 457 F. Supp. 3d at 828.

## II. American Express Cannot Be Held Liable Under an Aiding-and-Abetting Theory.

Plaintiff premises both of his claims on the theory that American Express is aiding and abetting violations of CIPA by Meta. The aiding-and-abetting theory falls short.

### A. CIPA Section 632 Does Not Authorize Aiding-and-Abetting Liability.

Plaintiff's claim that American Express "aided, employed, agreed, and conspired" with Meta in violation of Section 632 fails as a matter of law because there is no such cause of action. AC ¶ 2. "[P]urely statutory" claims rest on a "different foundation" than common law claims, so there can be no aiding-and abetting-liability absent explicit statutory authorization. *Clarke v. Horany*, 212 Cal. App. 2d 307, 311 (1963); *see also Wolfe v. City of Fremont*, 144 Cal. App. 4th 533, 552 (2006) (no aiding and abetting "in the absence of statutory authority").

Plaintiff does not—and cannot—cite to any language in Section 632 authorizing an aiding-and-abetting theory of liability. Unlike Section 631(a), which expressly authorizes liability against one "who aids, agrees with, employs, or conspires" with a primary violator, Section 632 includes no similar aiding-and-abetting provision. And the portion of the statute providing the civil cause of action (Cal. Penal Code 637.2) by its express terms "provide[s] civil damages only against 'the person who committed the violation.'" *Kimmel v. Goland*, 51 Cal. 3d 202, 213 n.9 (Cal. 1990) (quoting Cal. Penal Code 637.2(a)); AC ¶ 15. Plaintiff's attempt to invent a cause of action for aiding and abetting should fail as a matter of law.

### B. Plaintiff Fails To State a Claim for Aiding and Abetting Under Section 631.

American Express's alleged conduct also does not meet the standard for aiding-and-abetting liability under Section 631. To state a claim that American Express "aid[ed], agree[d] with, employ[ed], or conspire[d] with" Meta in violation of CIPA Section 631(a), plaintiff must plausibly allege that American Express knew both (i) that Meta was intentionally collecting the contents of communications that plaintiff had applied for an American Express credit card and (ii) that Meta was doing so for its own use, not as a service provider to American Express. *See Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *15 (S.D. Cal. Mar. 21, 2024) (plaintiff must plead knowledge the defendant's "conduct constituted a breach of some duty"); *Heiting*, 2024 WL 1626114, at *10 n.14 (plaintiff must allege that the defendant "knew [the primary violator] would use the information collected for the benefit of other … customers").[15]

Plaintiff's complaint fails on both counts. Plaintiff offers no factual allegations that American Express knew its configuration of the Pixel would reveal the fact that plaintiff had applied for an American Express credit card. Plaintiff cannot establish aiding-and-abetting liability by "simply restat[ing] that Defendant deployed [certain software] onto its website." *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 3761293, at *3 (S.D. Cal. Aug. 5, 2024); *Rodriguez*, 2024 WL 1223485, at *14–15 (dismissing aiding-and-abetting claim under CIPA where the plaintiff did "not allege that [the defendant] knew that [a software-provider] was using" the software to collect data for its own purposes). Plaintiff does nothing more here. Indeed, he does not make any allegations at all about how American Express configured the Pixel on its website, let alone demonstrate how it would reveal the fact of a credit card

[15] As explained above, aiding-and-abetting liability is not authorized by Section 632. Even if it were, plaintiff's allegations fail to state a claim for the same reason his Section 631 theory fails.

application. American Express cannot be liable for aiding and abetting a purported violation of CIPA when these factual allegations are lacking. *See Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (dismissing CIPA Section 631 aiding-and-abetting claim for failure to plead "knowledge" of third party's "'wiretapping' ... in violation of CIPA").

Plaintiff also does not allege—even in conclusory terms—that American Express knew that Meta was collecting data for its own use or that the Pixel on its website was configured to permit such use. As explained above, the LDU feature requires Meta to act as a service provider. Plaintiff's allegations do not even address this feature, and if it was activated, any inference that Meta was collecting data for its own benefit (as opposed to for the benefit of American Express) would be illogical. The mere fact that American Express allegedly "embedded [Meta's] software code into its website" does not "speak to [American Express's] knowledge." *Id.* at *6. Plaintiff's allegations "remain concerningly vague," and thus should be dismissed. *Heiting*, 2024 WL 1626114, at *10 n.14.

## III. Plaintiff Fails To Plead a Timely Claim.

Finally, CIPA claims are subject to a one-year statute of limitations. *Brodsky*, 445 F. Supp. 3d at 134. The Complaint was filed on March 29, 2024, but plaintiff alleges only that he submitted a credit card application on American Express's website "in or about March 2023." AC ¶ 6. Because plaintiff fails to specify when he submitted his application, he fails to allege that his claims are timely under CIPA, and the Complaint should be dismissed. *See Brodsky*, 445 F. Supp. 3d at 134 (dismissing CIPA claim where plaintiffs failed to plead when certain technology purportedly intercepting their communications was activated).

## CONCLUSION

For the foregoing reasons, American Express respectfully requests that the Court dismiss the Amended Complaint with prejudice.

New York, New York
Dated: October 28, 2024

Respectfully submitted,

COVINGTON & BURLING LLP

*/s/ Kathryn E. Cahoy*
Kathryn E. Cahoy
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Tel: 650-632-4700
kcahoy@cov.com

Jordan S. Joachim
The New York Times Building
620 8th Avenue
New York, New York 10018
Tel: 212-841-1000
jjoachim@cov.com

*Attorneys for Defendant American Express Travel Related Services Company, Inc.*