**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHILIP CAMACHO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN EXPRESS COMPANY,<br><br>Defendant. | Civil Action No. 1:24-cv-02408-JPC |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated: December 11, 2024

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Philip L. Fraietta
Alec M. Leslie
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
pfraietta@bursor.com
aleslie@bursor.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ..... 1
II. THE COMPLAINT ADEQUATELY ALLEGES THAT META VIOLATES CIPA ..... 1
A. Plaintiff Has Sufficiently Alleged Meta's Intent ..... 1
B. The Complaint Alleges All Elements of Plaintiff's Wiretapping Claim ..... 4
1. The Complaint Plausibly Alleges That The Contents of Plaintiff's Communications Were Intercepted ..... 4
2. The Complaint Plausibly Alleges that Meta is a Third Party ..... 6
a. Meta is a Third-Party Wiretapper Under The "Separate Entity" Approach ..... 6
b. Meta Is A Third-Party Wiretapper Under The "Capability" Approach ..... 8
c. Meta Is A Third-Party Wiretapper Under The "Extension" Approach, Even Though This Approach Should Be Rejected ..... 9
3. Plaintiff's "In Transit" Allegations Are Sufficient ..... 11
C. The Complaint Establishes a Cause of Action for Violation of Section 632 ..... 13
1. The Communications Were Confidential ..... 13
2. Defendant's "Eavesdropping" Argument is a Straw Man ..... 14
3. The Pixel is a Device ..... 14
D. Defendant Fails To Show Consent ..... 16
1. Defendant Has Not Shown That Plaintiff Consented to Interception of His Sensitive Information ..... 16
a. Amex Has Not Met Its Burden of Proving Consent ..... 16
b. Defendant's Documentary Submission is Inadmissible ..... 17
c. AmEx Has Failed to Establish Plaintiff's Consent ..... 19
III. PLAINTIFF HAS ADEQUATELY PLED "AIDING" LIABILITY ..... 21
A. Defendant Can be Liable for Aiding Under Section 632 ..... 21
B. The Complaint Sufficiently Alleges Aiding Liability under Section 631 ..... 23
IV. PLAINTIFF'S CLAIMS ARE TIMELY ..... 24
V. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Augustine v. Lenovo (United States), Inc.*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) .......... 6

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2020) .......... 3

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) .......... 15

*Balletto v. Am. Honda Motor Co.*,
2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) .......... 8, 9, 10

*Balletto v. Am. Honda Motor Co.*,
2024 WL 589090 (N.D. Cal. Feb. 13, 2024) .......... 9

*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D. Cal. 2023) .......... 13, 23

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... 5, 12

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .......... 10

*Campbell v. Facebook Inc.*,
77 F. Supp. 836 (N.D. Cal. 2014) .......... 13, 14, 19

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. Feb. 22, 2024) .......... 20

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 24

*D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 7, 10, 12

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010) .......... 18

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 2, 15, 16

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. 2024) .......... 16

*EVO Brands, LLC v. Al Khalifa Grp. LLC*,
657 F. Supp. 3d 1312 (C.D. Cal. 2023) ........................................ 19

*Facebook, Inc. v. Teachbook.com LLC*,
819 F. Supp. 2d 764 (N.D. Ill. 2011) ........................................ 18

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ........................................ 21

*Franklin v. Ocwen Loan Servicing, LLC*,
2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) ........................................ 24, 25

*Gladstone v. Amazon Web Servs., Inc.*,
2024 WL 3276490 (W.D. Wash. July 2, 2024) ........................................ 4

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........................................ 4

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................ 10

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) ........................................ 22

*In re Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................ 5

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ........................................ 9

*Ibey v. Taco Bell Corp.*,
2012 WL 2401972 (S.D. Cal. June 18, 2012) ........................................ 18

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................ 2, 5, 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........................................ 5, 6

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................ 19

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ........................................ 17

*In re Google Inc. St. View Elec. Commc'ns. Litig.*,
794 F. Supp. 2d 1067 (N.D. Cal. 2011) ........................................ 2

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........................................ 15

*In re Google, Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 19

*In re PXRE Group, Ltd., Securities Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. Mar. 4, 2009) .......... 18

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 16

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 20

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... passim

*Kaplan Group Investments LLC v. A.S.A.P. Logistics Ltd.*,
694 F. Supp. 3d 374 (S.D.N.Y. 2023) .......... 2

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) .......... 22

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .......... 20

*Ladore v. Sony Computer Entertainment America, LLC*,
75 F. Supp. 3d 1065 (N.D. Cal. 2014) .......... 18

*Libman v. Apple*,
2024 WL 43114791 (N.D. Cal. Sept. 26, 2024) .......... 5

*Long v. Provide Com., Inc.*,
245 Cal. App. 4th 855 (2016) .......... 20

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 15

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) .......... 3

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 21

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .......... 15

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) .......... 4

*People v. Gibbons*,
215 Cal. App. 3d 1204 (1989) .......... 4

*ProBatter Sports, LLC v. Sports Tutor, Inc.*,
246 F.R.D. 99 (D. Conn. 2007)........................................................................................ 3

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)............................................................ 7, 12, 24

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ................................................................................................ 7, 8, 12

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d. 503 (C.D. Cal. 2021) .......................................................................... 2, 7, 11

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994)............................................................................................ 17

*Smith v. Google*,
2024 WL 2808270 (N.D. Cal. June 3, 2024) ..................................................................... 13

*Smith v. LoanMe, Inc.*,
483 Cal. 5th 183 (2021) .................................................................................................. 23

*Turner v. Nuance Communications, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) ............................................................. 21, 22

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ............................................................................. 16

*Valenzuela v. Nationwide Mutual Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. Aug. 14, 2023) ..................................................... 7, 10, 11, 12

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023)............................................................... 9, 10

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011)............................................................................. 21

*Walton v. EOS CCA*,
2017 WL 9531997 (S.D. Ind. July 24, 2017)..................................................................... 18

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ................................................................... 10

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........................................................................... 8, 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................................................... 6, 9

**STATUTES**

18 U.S.C. §§ 2510-2523 .......... 15

Cal. Penal Code § 31 .......... 21

Cal. Pen. Code § 631(a) .......... 12

Cal. Penal Code § 633.5 .......... 22

**RULES**

Fed. R. Civ. P. 8(a) .......... 3

Federal Rule of Evidence 201 .......... 18

Federal Rule of Evidence 201 (b) .......... 18

**OTHER AUTHORITIES**

RESTATEMENT (SECOND) OF CONTRACTS § 19 (AM. L. INST. 2002) .......... 20

## I. INTRODUCTION

Defendant American Express Company's ("Defendant" or "AmEx") motion to dismiss ("MTD") advances arguments that courts have rejected time and again. Pleading a California Invasion of Privacy Act ("CIPA") claim is not the onerous, complex process that Defendant makes it out to be. Plaintiff is not required to allege every minute detail that Defendant's motion demands. As set forth below, the First Amended Complaint ("FAC) more than sufficiently states a claim for violation of CIPA.

## II. THE COMPLAINT ADEQUATELY ALLEGES THAT META VIOLATES CIPA

### A. Plaintiff Has Sufficiently Alleged Meta's Intent

AmEx's contention that Plaintiff fails to allege Meta's intent to invade their privacy by wiretapping does not pass scrutiny. MTD at 9. Meta's intent is at the core of its business, and Plaintiff has set forth plausible allegations to this effect:

> Meta does not collect data by accident. Meta has intentionally created and specially designed the Facebook Pixel for the express purpose of collecting individual user data from the websites (and other platforms) where users, including Plaintiff, transmit that information without knowing that their data is being collected, compiled, and analyzed by third parties, for purposes Plaintiff did not consent for it to be used.

FAC ¶33.

Plaintiff alleges that Meta generates revenue by selling advertising space on its website, and that Meta highlights its ability to target users by surveilling user activity on and off the Facebook site. FAC ¶¶ 17-19. Facebook compiles this activity into a dataset that advertisers can use to apply filters and parameters to target their advertisements. *Id.* ¶ 19-22. Advertisers can also use Meta's Business Tools to build their own "custom audiences," which can be existing users or audiences with similar characteristics to its users. FAC ¶ 19. To create this dataset, Meta provides advertisers, including Defendant, with the Facebook Tracking Pixel tracking software for the very purpose of intercepting the content of users' communications on websites

and apps. *See, e.g.*, ¶¶ 19-22, 68. Meta subsequently analyzes and uses this data to provide advertising and analytics services, as well as for its own benefit. FAC ¶¶ 22, 31-33. This is—and can only be—intentional conduct.

Plaintiff's allegations are more than sufficient to establish Meta's intent to eavesdrop on AmEx's users. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1059 (N.D. Cal. 2015) (wiretapping found where third-party "designed" the "software" that was then embedded into mobile device, which led software to transmit data); *In re Google Inc. St. View Elec. Commc'ns. Litig*., 794 F. Supp. 2d 1067, 1082 (N.D. Cal. 2011) ("Plaintiffs plead facts sufficient to state a [Wiretap Act claim where] Defendant intentionally created, approved of, and installed specially-designed software and technology . . . and used this technology to intercept Plaintiffs' . . . communications."); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d. 503, 512 (C.D. Cal. 2021) (sustaining § 631 against third party software provider and finding that it "intentionally recorded" plaintiff's data). Plaintiff's allegations more than plausibly allege that Meta intended to collect information transmitted via the Facebook Pixel, particularly given that all reasonable inferences must be drawn in favor of Plaintiff on a motion to dismiss. *Kaplan Group Investments LLC v. A.S.A.P. Logistics Ltd.*, 694 F. Supp. 3d 374, 384 (S.D.N.Y. 2023) ("In resolving a motion to dismiss, the Court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.'") (internal citation omitted).

Defendant argues Meta's Terms mean it could not have had the intent to collect the data that the Complaint alleges it collects, because Meta's Terms state that Meta does not want to collect sensitive information. MTD at 10. This argument was rejected in *Doe v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) ("[Defendant] also argues that intent cannot be alleged because, as plaintiffs acknowledge, Meta seeks to avoid receiving sensitive information by

contractually forbidding developers from sending it and filtering out any potentially sensitive data it detects on the back end. … What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record. ...At this stage, intent has been adequately alleged."). While Defendant cites *B.K. v. Desert Care Network*, 2024 WL 1343305 at *7 (C.D. Cal. Feb. 1, 2020), the trial court there made no analysis of the issue, and apparently did not consider – or was not asked to – whether factual development was required. And *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711 (2022) is too factually different from this case to support Defendant's contentions. *Lozano* was not decided under section 631(a), and it was a decision rendered after an administrative proceeding with a fully developed evidentiary record. 73 Cal. App. 5th at 715.

Here, too, AmEx's argument (at best) raises questions of fact that are well beyond the scope of a motion to dismiss. Furthermore, AmEx demands an excessive and unnecessary level of detail that is not required under Rule 8. For example, Defendant argues, "Plaintiff pleads no facts suggesting that *Meta* knew or believed American Express had configured the Pixel to violate Meta's policies (and, to be clear, it did not)." MTD at 10. But the Complaint never mentions how the Pixel is configured because that issue is not part of Plaintiff's case. Plaintiff is not required to satisfy AmEx's made-up demands. The notice pleading is satisfied by a simple "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). That is satisfied here. *ProBatter Sports, LLC v. Sports Tutor, Inc.*, 246 F.R.D. 99, 101 (D. Conn. 2007) ("Sports Tutor's motion for a more definite statement seeks greater detail in the complaint regarding the causal link between the company and the alleged actions. That level of detail is not required by Rule 8 …").

Ultimately, "Whether a person possesses the requisite intent under CIPA is generally a question of fact." *Gladstone v. Amazon Web Servs., Inc.*, --- F. Supp. 3d ----, 2024 WL 3276490, at *10 (W.D. Wash. July 2, 2024). Discovery will show how the Pixel was configured on AmEx's site, and whether AmEx violated Meta's terms of use by allowing the Pixel to capture sensitive data. The Court should reject Amex's attempt to create a dispute of fact at this stage. AmEx's use of the Pixel is a factual question inappropriate for resolution at this early juncture.

### B. The Complaint Alleges All Elements of Plaintiff's Wiretapping Claim

#### 1. <u>The Complaint Plausibly Alleges That The Contents of Plaintiff's Communications Were Intercepted</u>

Defendant argues the Complaint does not plausibly allege that Meta intercepted the "contents" of "communications." MTD at 11. Defendant is incorrect because the Complaint alleges that the Pixel on AmEx's website transmits personally identifiable information from Facebook cookies to Facebook, along with event data, that includes the fact that the user applied for an American Express card. *Id.* ¶¶ 24-30.

Defendant first claims that Plaintiff's interactions with the Website were not "communications." But under any interpretation, Plaintiff adequately alleges that the collected information constitutes a "communication." California courts interpret the term "communication" differently. On one end of the spectrum, "communication" is interpreted "broadly," covering "the exchange of thoughts, messages, or information by any means." *See People v. Gibbons*, 215 Cal. App. 3d 1204, 1208 (1989); *see also Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) (implying that "communication" includes "record information"). On the other end of the spectrum, "communication" only covers "content," not "the non-content-based content coincident to the communication." *See People v. Drennan*, 84 Cal. App. 4th 1349, 1357 (2000). Under either approach, Plaintiff's allegations suffice. Plaintiff

alleges the Pixel captures what pages a visitor views, what buttons a visitor clicks, URLs visited, text typed into text boxes or fields, forward clicks through the Website, and "many other items." FAC ¶ 23. The transmission of these items, including URLs and text typed into fields in the AmEx Website, is a "communication." Even in *Libman v. Apple*, 2024 WL 43114791 (N.D. Cal. Sept. 26, 2024), which Defendant cites in support of its argument, the district court acknowledged that where URLs and users' actions on a website were transmitted, those could be considered "communications." The transmissions here were also "communications."

As used in § 631(a), "content" refers to the "intended message conveyed by the communication." *In re Meta Pixel Healthcare Litig.* ("*In re Meta Pixel*"), 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). "Analysis of CIPA violations is the same as the analysis for the federal Wiretap Act, … and [u]nder the Wiretap Act, 'contents' is defined as 'any information concerning the substance, purport, or meaning of [a] communication.'" *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (internal citations omitted). "[C]ontent" includes "the names of buttons clicked… ." *See In re Meta Pixel*, 647 F. Supp. 3d at 795. "Content" may also include "full-string, detailed URLs" that include "'the particular document within a website that a person views[.]'" *In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589, 605 (9th Cir. 2020); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1083 ("URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act.") (internal citations omitted).

The Complaint alleges that the Tracking Pixel transmits personally identifiable information, including the fact that the particular user applied for an American Express card. FAC ¶ 26. As the Complaint explains, "The Facebook Tracking Pixel tracks numerous types of action—or, as Facebook calls it, "events"—that users take on websites, including the website's metadata, along with what pages a visitor views and what buttons a visitor clicks. Events tracked

through the Pixel include URLs visited and text typed into text boxes or fields, when Website users have progressed through portions of the Website (which requires affirmative button presses on the part of Website users), and many other items." FAC ¶ 23. The Complaint explicitly states, "the c_user cookie …transmits the user's Facebook ID." *Id.* ¶ 25. Furthermore, Plaintiff alleges that "A Facebook ID is personally identifiable information. Anyone can identify a Facebook profile – and all personal information publicly listed on that profile – by appending the Facebook ID to the end of Facebook.com. … The combination of the event data and the personally identifiable information from Facebook's cookies embedded on americanexpress.com permits Facebook to obtain confidential information for specific individuals." *Id.* ¶¶ 28-29.

Accordingly, Plaintiff has adequately alleged that Defendant disclosed the "contents" of his "communications."

**2. <u>The Complaint Plausibly Alleges that Meta is a Third Party</u>**

Defendant contends Plaintiff cannot state a § 631(a) claim, arguing that the Facebook Pixel is a mere "extension" of AmEx and not a third-party listener. MTD at 14-16. Whether Defendant is a third-party wiretapper is a "a question of fact for a jury, best answered after discovery into the storage mechanics of [the wiretapper]." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *see also Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *3 (S.D. Cal. Aug. 2, 2023) (same). As explained below, courts are generally split into three camps regarding whether a software-as-a-service ("SaaS") provider is a third-party wiretapper for the purposes of CIPA § 631. Defendant's proffered interpretation—the "extension" approach—has no basis in the text, caselaw, and legislative policy behind CIPA § 631. Yet even under this interpretation, Plaintiff's allegations are sufficient.

a. <u>*Meta is a Third-Party Wiretapper Under The "Separate Entity" Approach*</u>

The first line of cases has adopted the "separate entity" approach, which holds that a SaaS

vendor like Facebook is a third-party wiretapper if it "is a separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh*, 562 F. Supp. 3d at 520 (finding SaaS provider was a third party to communications between Nike.com and Nike customers); *see also Valenzuela v. Nationwide Mutual Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. Aug. 14, 2023) ("[A] plausible inference from Valenzuela's allegations is that Akamai—a corporate entity wholly distinct from Nationwide—is a third party learning the contents of communications in real time."); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("[I]t cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication."); *D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) ("Plaintiffs sufficiently allege Defendant allowed Vergic to contemporaneously duplicate their chat conversations with Defendant as they occurred, thereby reading them. … Therefore, Plaintiffs successfully allege, at this stage, that JC Penney may be liable for violating Clause Two of CIPA, by aiding and abetting Vergic.").

In short, this line of reasoning holds that if the SaaS provider (*i.e.*, Facebook) is a separate and distinct entity from the actual parties to the communication (*i.e.*, Plaintiff and AmEx), then the SaaS provider is a third party wiretapper. "Whether the third party's use was purely for [the party to the communication's] benefit, rather than for its own benefit, is immaterial under the statute." *Valenzuela*, 686 F. Supp. 3d at 981.

The "separate entity" approach best aligns with the legislative purpose behind section 631, which is to prevent the "simultaneous dissemination [of the contents of a conversation] to *an unannounced second auditor,* whether that auditor be a person *or mechanical device*." *Ribas*

*v. Clark*, 38 Cal. 3d 355, 360-361 (1985). The purpose of wiretapping statutes like CIPA is to prevent an entity—be it man or machine—from listening in on a conversation between two others, which preserves the right of the parties to "control the nature and extent of the firsthand dissemination of [their] statements." *Ribas*, 38 Cal. 3d at 361. This approach also best comports with *Ribas* itself. In *Ribas,* Clark eavesdropped on a conversation between husband and wife. There were no allegations that Clark used the wiretapped information for his own benefit. Clark was a separate person who listened in on a conversation to which he was not a party, at the direction and for the benefit of the wife. Nonetheless, the California Supreme Court found Clark was a third-party wiretapper for the purposes of CIPA § 631(a). *Id.* at 361-62. Indeed, *Ribas* went as far as to contemplate liability under CIPA § 631(a) for an employer who "request[s] a secretary to secretly transcribe a conversation over an extension," even though a secretary would be doing the recording solely for the benefit of their employer. *Ribas*, 38 Cal. 3d at 361.

Plaintiff's allegations make clear that Meta is no different than the hypothetical secretary in *Ribas*. *See* FAC ¶¶ 22-28. Accordingly, under the "separate entity" approach, Meta was a third-party wiretapper to Plaintiff's communications with Defendant.

b. *Meta Is A Third-Party Wiretapper Under The "Capability" Approach*

Defendant also argues Plaintiff must allege not only that Meta uses the data it collects for its own benefit, but also that it has the capability to do so. MTD at 14-16. Not so. A growing number of courts have adopted an approach that holds a SaaS provider is a third-party wiretapper if the SaaS provider "ha[s] the *capability* to use its record of the interaction for any other purpose ([unlike] a tape recorder [which] has no independent capability to divulge the recording for any other purpose but that of its owner)." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (emphasis in original); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972-973 (N.D. Cal. 2023) (adopting "capability" approach); *Balletto v. Am. Honda Motor Co.*, 2023 WL

7026931, at *2 (N.D. Cal. Oct. 24, 2023) ("*Balletto I*") (same); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (C.D. Cal. Nov. 27, 2023) (same); *Heiting v. Taro Pharmaceuticals USA, Inc.*, 2023 WL 9319049, at *4 (C.D. Cal. Dec. 26, 2023) (same). The "capability" approach does not require that the SaaS provider actually use the data for another purpose in the instant action, only that the SaaS provider can do so. *Javier*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "Active Prospect can use that information for other purposes, even if Javier has not alleged that they have done so in this case").

Plaintiff's allegations suffice to show Meta is a third-party eavesdropper under the "capability" approach. Plaintiff alleges Meta sells advertising with its ability to surveil users and capture their data, then compile it into datasets that advertisers, such as Defendant, can use to target consumers. FAC ¶¶ 17-23. Meta has the capability to—*and does*—use the wiretapped data for a number of purposes other than providing them to AmEx, including but not limited to "contact information matching; measurement and analytics services; ad targeting; commercial and transactional messages; ad delivery improvement; feature and content personalization; and product improvement, provision, and securement." FAC ¶ 32.

These allegations make clear that Meta has the capability to "capture[], store[], and interpret[] [] real-time data—which extends beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081; *Balletto v. Am. Honda Motor Co.*, 2024 WL 589090, at *3 (N.D. Cal. Feb. 13, 2024) ("Balletto does include allegations about how Salesforce would be capable of using data from Honda's website: through the Einstein data intelligence platform.").

c. *Meta Is A Third-Party Wiretapper Under The "Extension" Approach, Even Though This Approach Should Be Rejected*

Defendant relies on a third line of cases adopting the "extension" approach, which generally holds that a SaaS provider (like Meta) is an extension of the company employing it, and that the SaaS provider only "provides a tool … that allows [the company] to record and

analyze its own data in aid of [its] business." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). Defendant cites decisions that simply follow *Graham*'s reasoning without much independent analysis. *E.g.*, *Yale v. Clicktale, Inc.*, 2021 WL 1428400 at *3 (N.D. Cal. Apr. 15, 2021), *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023). The Complaint alleges that Meta uses the datasets it assembles from intercepted user information to sell advertising space. FAC ¶¶ 17-23, 32. Accordingly, even under the "extension" approach, Plaintiff has alleged Meta is a third-party wiretapper because Meta "intercepted and used the data itself." *Graham*, 533 F. Supp. 3d at 832.

Nevertheless, the "extension" approach is not the correct one. As more recent decisions have commented, "*Graham* and its progeny are based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant." *Yockey*, 688 F. Supp. 3d at 972; *see also Javier*, 649 F. Supp. 3d at 900 (rejecting *Graham*); *Balletto I*, 2023 WL 7026931 at *2 (same); *Valenzuela*, 686 F. Supp. 3d at 981 (same); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (same); *D'Angelo*, 2023 WL 7006793, at *7-8 (same).

First, *Graham*'s holding "interprets the second prong of the statute"—which penalizes "reading" communications—"based on the intentions and usage of the prospective third party." *Javier*, 649 F. Supp. 3d at 900. And "the third prong of the statute already penalizes 'use.'" *Id.* "Thus, reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)." *Id.*; *see also D'Angelo*, 2023 WL 7006793, at *7-8 ("A use requirement is more appropriate in a Clause Three, not Clause Two … To plausibly allege a violation of Clause Two, [plaintiffs] need not allege that Vergic [conducted wiretapping] for its own use."). Further, CIPA § 631(a)[iv] penalizes those who "aid[], agree[] with, employ[], or conspire[] with any person" to conduct wiretapping. In other words, CIPA §

631 not only prohibits wiretapping by a third party like Meta, but also prohibits a party to the communication like AmEx from allowing Meta to wiretap *on its own behalf*. *Graham*'s reading is contrary to this plain text as well, as it would exempt an employer who asks his or her employee to conduct wiretapping.

Second, in *Ribas*, the California Supreme Court "did not consider the wife's friend's intentions or the use to which they put the information they obtained." *Javier*, 649 F. Supp. 3d at 900. "Instead, [*Ribas*] emphasized the privacy concerns at issue with having an unannounced second auditor listening in on the call." *Id.* (cleaned up). *Graham*'s holding, however, would have exempted the friend and the hypothetical secretary, as they were simply wiretapping on behalf of the wife and their employer respectively.

*Third*, as the *Saleh* court recognized:

> [The holding in *Graham* [w]ould imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party. The text of section 631(a), however, does not contain any such exception, and indeed, [*Graham* and Defendant] invite an interpretation that would vitiate the statute's protections.

*Saleh*, 562 F. Supp. 3d at 520; *Valenzuela*, 686 F. Supp. 3d at 980 ("Eavesdropping on a conversation at the time it occurs is a violation of Section 631, even if done for the benefit of a party to the conversation."). Adopting the extension approach would undermine CIPA's purpose of preventing the dissemination communications to an unannounced second auditor. Although Plaintiff's allegations satisfy the "extension" approach, the Court should not apply it.

#### 3. <u>Plaintiff's "In Transit" Allegations Are Sufficient</u>

AmEx argues the FAC does not plausibly plead that the communications were intercepted "in transit." MTD at 16. Contrary to Defendant's contention, Plaintiff has alleged that Meta intercepted his communications in transit: "Defendant allowed the Facebook Tracking Pixel on the Website to send the fact that he applied for an American Express credit card

contemporaneously to Meta. This information was intercepted in transit and sent to Meta." FAC ¶ 6. In addition, the Complaint alleges:

> When a user accesses a website hosting the Facebook Tracking Pixel, Facebook's software surreptitiously directs the user's browser to simultaneously send a separate message to Facebook's servers. This second, secret transmission contains the original GET request sent to the host website, along with additional data that the Pixel collects. This transmission is initiated by Facebook code and is concurrent with the communications with the host website.
>
> [W]hen a user communicates with Defendant's Website, those communications are simultaneously and contemporaneously duplicated and sent to Facebook at the same time as they are being sent to Defendant. Thus, Facebook's interception of these communications occurs "in transit."

FAC ¶¶ 20-21. These allegations are sufficient because Plaintiff sets forth the precise means by which the communications were intercepted while "in transit," prior to reaching their final destination. *See id.* ¶ 51. No additional allegations are required. *See, e.g.*, *D'Angelo*, 2023 WL 7006793, at *8; *Valenzuela*, 686 F. Supp. 3d at 978-79; *Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d at 1027. Defendant's arguments to the contrary are based on mere speculation as to how the interaction unfolded, MTD at 17, and must await factual development.

Defendant also "ignores the plain language of section 631." *Ribas*, 38 Cal. 3d at 359. CIPA § 631(a) is written in the disjunctive, imposing liability for eavesdropping on a communication "while [it] is in transit or passing over any wire, line, or cable, *or* is being sent from, *or* received at any place within this state." Cal. Pen. Code § 631(a) (emphasis added). Thus, CIPA § 631 prohibits third parties from intercepting communications "while the communication[s] [are] either 'in transit' or [are] 'being sent from' and 'received at' a place within this state." *Ribas*, 38 Cal. 3d at 360 (emphasis added); *Revitch*, 2019 WL 5485330, at *2 ("the particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis" because "[s]ection 631's protections extend explicitly to the beginnings and ends of

communications"). The FAC alleges that Plaintiff is a resident of California. FAC ¶ 6. Accordingly, even if Plaintiff's communications were not intercepted "in transit"—and they were—his communications were "sent from, or received at, a place within this state."

### C. The Complaint Establishes a Cause of Action for Violation of Section 632

#### 1. <u>The Communications Were Confidential</u>

A "confidential communication" is "any communication carried on in circumstances as may reasonably indicate *that* any party to the communication desires it to be confined to the parties thereto[.]" CIPA § 632(c). AmEx bootstraps its dispute with the FAC's allegations here, arguing that the FAC merely shows that Facebook IDs were transmitted to Meta and that such information is not confidential within the meaning of the statute. MTD at 16-17. Defendant is wrong because Plaintiff adequately alleges Meta intercepted personally identifiable information.

A district court at the epicenter of CIPA litigation, the Northern District of California, recently rejected the same arguments that AmEx makes here. In *Smith v. Google*, --- F. Supp. 3d ---, 2024 WL 2808270 (N.D. Cal. June 3, 2024), the defendant argued, as Defendant does here, that there is a "presumption" under California law that online communications are not confidential. The court disagreed. "This view of California law overreads the cases. … Although California courts applying Section 632 to online communications have concluded in certain cases that communications were not confidential, 'California courts have never recognized a legal "presumption" that internet communications are not confidential under Section 632.' *See Brown v. Google LLC*, 685 F.Supp.3d 909, 938 (N.D. Cal. 2023)." *Smith*, 2024 WL 2808270, at *6.

The *Smith* court went on to distinguish between the cases Google cited, including *Campbell v. Facebook Inc.*, 77 F. Supp. 836 (N.D. Cal. 2014), which Defendant cites here. The cases Google cited "involved internet chats and emails, not sensitive financial information

submitted to a tax preparation website. The scattering of state and federal cases (none from the California Supreme Court) considering various communications on a case-by-case basis do not establish that California law presumes the non-confidentiality of all online communication." *Id.* (cleaned up). As the *Smith* court explained:

> In any case, the factual circumstances alleged here are clearly distinguishable from chats or emails. Plaintiffs are not alleging that their communications with another person were intercepted. The cases Google cites conclude that online chats and emails cannot be reasonably expected to be confidential because they "can easily be shared by ... the recipient(s)." *See Campbell*, 77 F. Supp. 3d at 849. But that reasoning is wholly inapplicable here. Plaintiffs instead allege that they expected their tax information would remain confidential—an expectation they argue was objectively reasonable because sharing tax return information without consent is a crime. At the pleading stage, plaintiffs have plausibly alleged that Google intercepted communications that were confidential under Section 632.

*Id.* The information transmitted here is also sensitive personal information. FAC ¶¶ 23-28.

**2. <u>Defendant's "Eavesdropping" Argument is a Straw Man</u>**

In arguing that the FAC does not state facts supporting Plaintiff's eavesdropping claim under section 632, AmEx simply reiterates its contentions that Meta was not a third-party eavesdropper and that no "communication" took place. Plaintiff has addressed those arguments above. AmEx also introduces its affirmative defense of consent, arguing that Plaintiff must have expected eavesdropping, because AmEx and Meta "disclosed to users their data collection practices." MTD at 20. Plaintiff responds to the argument in § II.D.1, *infra*.

**3. <u>The Pixel is a Device</u>**

AmEx's contention that the Facebook Pixel is not a "device" within the meaning of section 632 is also threadbare. Defendant cites no cases in which a court has held that a pixel is not a "device." But in the past year, another case in the Northern District of California has squarely held that the Facebook Pixel is a device. Indeed, in that case, Meta itself is the

defendant and it argued that the Pixel is not a device "because it is a piece of software." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d at 1080.

The court in *Doe* accepted the plaintiffs' distinction between the cases that Meta cited and that Defendant cites here, *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (Google maps software and related "services are not a 'device' within the meaning of Section 637.7(d)."); *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) (an "electronic tracking device" does not include "software installed in mobile devices"). Those cases were decided under Penal Code section 637.7, which penalizes the unauthorized use of "electronic tracking devices" to track a person's location or movements. The courts in those cases held that software was not an "electronic tracking device."

The *Doe* court agreed that those holdings did not define "device" under section 632. Instead, the court relied on "construing and interpreting CIPA consistently with the [Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523] which hold that servers or software qualify as 'devices' under the ECPA" to hold that the Facebook Pixel is a device under section 632:

> Most on point is *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015). There, plaintiffs alleged that a software application, once installed on users' phones, "surreptitiously intercepted personal data and communications and transmitted this data to Carrier IQ and its customers." Id. The Honorable Edward M. Chen held that "plaintiffs have sufficiently alleged that the Carrier IQ Software is a 'device' for purposes of the Wiretap Act." Id. at 1084. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) (finding software that "surreptitiously intercepted personal data" to be "device*"); Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 690 (N.D. Cal. 2021) (finding the "Siri software" to be "device"); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1042 (N.D. Cal. 2014) (accepting allegations that Apple used a "electrical tool" to be a "device" under analogous Wiretap Act).
>
> * * *
>
> The section 637.7 cases are distinguishable, and absent contrary authority under section 632(a), I agree that the Pixel software is a device under section 632(a).

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d at 1080.

The *Doe* court also chastised Meta for "fabricating" the argument by citing cases decided under a different section of the statute. "Indeed, Meta has fabricated this argument by pointing to the definition of a separate term — "electronic tracking device[s]"—found in an entirely different provision of CIPA regarding location tracking. … Meta cites no authority for interpreting these two different terms in two different sections regulating different conduct in the same manner." *Id.* The Court should follow this well-reasoned decision. Software is a "device" within the meaning of section 632, and the Facebook Pixel is software. Accordingly, the Pixel is a device.

### D. Defendant Fails To Show Consent

#### 1. <u>Defendant Has Not Shown That Plaintiff Consented to Interception of His Sensitive Information</u>

##### a. <u>*Amex Has Not Met Its Burden of Proving Consent*</u>

Defendant characterizes lack of consent as an element of CIPA, MTD at 21-22, but this is wrong. Defendant, not Plaintiff, bears the burden of proving consent. Consent is an affirmative defense to a CIPA claim. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023) ("[u]nder California law and generally applicable principles of contract law, the burden is on [Defendant] as the party seeking [enforcement of the contract] to show that it provided **notice of** … and that there was **mutual assent to** the contractual agreement[s].") (emphasis added).

Plaintiff has alleged a lack of consent to Meta's wiretapping and to Defendant's enabling of that wiretapping. FAC ¶¶ 35, 36, 45, 58, 61, 71. At this stage, Plaintiff's allegations are sufficient. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756-57 (N.D. Cal. 2023) ("Plaintiff alleges she was not informed her conversations were being recorded, intercepted, or eavesdropped upon, and did not consent to monitoring by the third-party when she communicated with Defendant. That is sufficient at this stage.") (cleaned up); *Esparza v.*

*Kohl's, Inc.*, --- F. Supp. 3d ---, 2024 WL 1152732, at *3 (S.D. Cal. 2024) ("Plaintiff alleges neither he nor class members expressly or impliedly consented to any of Defendant's actions when they used the Website to chat with a Kohl's customer service representative. That is sufficient at this stage.") (cleaned up).

b. *Defendant's Documentary Submission is Inadmissible*

Defendant has submitted its Terms and Conditions as Exhibit 1 to the Declaration of Jordan S. Joachim (ECF 21-1) and its Privacy Statement as Exhibit 2 (ECF 21-2). Defendant asks the Court to draw inferences from those documents in its favor, namely, that Plaintiff purportedly saw and assented to those various policies, and that such policies would permit the disclosure of Plaintiff's personally identifiable information. MTD at 21-22. That argument would turn the Rule 12(b)(6) motion standard on its head. *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1145 (N.D. Cal. 2009) ("Defendants' argument relies on inferences being drawn in their favor which, of course, is the antithesis of the standard of review applicable to a motion to dismiss.").

Furthermore, the AmEx Terms and Conditions and Privacy Statement are not within the scope of the motion to dismiss. They are not incorporated by reference into the First Amended Complaint. Defendant contends the Court should consider the previous version of the Complaint to show that Plaintiff consented to the Terms and Conditions. MTD at 22. Defendant is incorrect. Under the general rule, "an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). While there is a limited exception to this rule, it does not apply to motions to dismiss. "[T]he Second Circuit formulated that rule in the context of a district court's refusal to admit a prior, inconsistent pleading as evidence at trial" where the jury is resolving issues of fact but such an approach is inappropriate during "consideration of a motion to dismiss, where the Court

is obliged to evaluate the sufficiency of the pleading itself[.]" *In re PXRE Group, Ltd., Securities Litig.*, 600 F. Supp. 2d 510, 525 (S.D.N.Y. Mar. 4, 2009).

This Court should follow the proper approach. In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Plaintiff does not rely on or discuss the AmEx terms. "[A]llowing [defendant] to cherry pick portions of Facebook's website to introduce via a motion to dismiss simply because the complaint implicates the two websites would convert an examination of the complaint into full-blown summary judgment analysis. This result would vitiate an otherwise narrow exception to the general rule that a motion under Rule 12(b)(6) stands or falls based on the allegations in the complaint." *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 773 (N.D. Ill. 2011).

Second, Defendant has not asked the Court to take judicial notice of them, nor are they judicially noticeable. Under Federal Rule of Evidence 201, a court may take judicial notice only of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). "Judicial notice is generally reserved for the acknowledgement of matters of 'common knowledge.'" *Walton v. EOS CCA*, 2017 WL 9531997, at *7 (S.D. Ind. July 24, 2017). AmEx's website terms and the privacy statement do not meet this standard. *See Ladore v. Sony Computer Entertainment America, LLC*, 75 F. Supp. 3d 1065, 1074 (N.D. Cal. 2014) (court refused to take judicial notice of defendant's Terms of Service and/or Software Licenses because documents not the type whose "accuracy cannot be reasonably questioned."); *Ibey v. Taco Bell Corp.*, 2012 WL 2401972, *1 (S.D. Cal. June 18, 2012) (LinkedIn page and Mobil Marketing Association U.S. Consumer Best Practices

are not document sources whose accuracy cannot be reasonably questioned).

Third, the Exhibits are offered to dispute the facts pled in the Complaint, *i.e.*, to advance Defendant's presumed affirmative defense of consent. "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth. ... A court may not take judicial notice of the truth of disputed factual matters at the pleading stage." *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1320-21 (C.D. Cal. 2023).

Finally, Exhibits 1 and 2 are not even properly authenticated. The declaration attaching them is a declaration of an attorney from Covington & Burling, Defendant's outside counsel, and does not include an averment of personal knowledge nor any other shred of foundation for their admissibility. *See* Declaration of Jordan S. Joachim (ECF No. 21), ¶ 1. Nor is there any testimony in the declaration or indication in the documents themselves that they are the same as those in effect on the date that Plaintiff purportedly consented to them.

c. *AmEx Has Failed to Establish Plaintiff's Consent*

Consent "can be explicit or implied, but any consent must be actual." *In re Google, Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013). For consent to be actual, the disclosures must "explicitly notify" users of the practice at issue. *Id.* at *13; *see also Campbell*, 77 F. Supp. 3d at 847-48 (explaining that, for a finding of consent, the disclosures must have given users notice of the "specific practice" at issue). The disclosures must have only one plausible interpretation for a finding of consent. *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019). "[I]f a reasonable ... user could have plausibly interpreted the contract language as not disclosing that [the defendant] would engage in particular conduct, then [the defendant] cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent)." *Id.* at 789-90.

The Court should reject the assertion that Plaintiff assented to Defendant's terms. AmEx does not—and could not, on a motion to dismiss—provide any evidence of Plaintiff having consented or, furthermore, how or when these terms were even presented to him.

Mutual assent requires, at minimum, that the party relying on the contractual provision establish that the other party had notice and gave some indication of assent to the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 19 (AM. L. INST. 2002) ("The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents."); *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855 (2016). Under California law, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Long*, 245 Cal. App. 4th at 862 (citation omitted). Courts must evaluate "whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Merely having a privacy statement online is not sufficient for consent. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1000 (N.D. Cal. Feb. 22, 2024) ("Ring fails to cite any cases in which merely having a privacy policy online is sufficient to show consent under CIPA."). Rather, Defendant must establish Plaintiff's notice of and assent to the Terms of Use and Privacy Statement, which Defendant cannot do. Moreover, even hypothesizing that Plaintiff was on notice of and assented to the privacy policies, Defendant fails to show such notice and assent was procured prior to the wiretapping, rather than after-the-fact. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("[W]e conclude that the California Supreme Court would interpret Section 631(a) to require the prior consent of all parties to the communication.").

What Plaintiff or any reasonable consumer would believe if they were on notice of the

statements that AmEx proffers cannot be determined at this stage. *See*, *e.g.*, *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) ("[w]hether reasonable consumers would understand, based on the … Terms of Use or … Privacy Policy, that by using the … website they were consenting to the disclosure of their personally identifiable information … is a question that should be resolved on a fuller factual record."); *Turner v. Nuance Communications, Inc.*, --- F. Supp. 3d ---, 2024 WL 2750017, at *7 (N.D. Cal. May 28, 2024) (declining to dismiss CIPA claim based on consent where "there is a factual dispute over whether the DAA sufficiently notified Plaintiffs"); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims."). Here, there is a question of fact not only whether the Terms of Use and Privacy Policy are as represented by Defendant, but also as to whether the policies sufficed as consent for the wiretapping. The documents contain inconsistent and/or confusing statements insufficient for consent. For instance, Exhibit 2 states "Aggregated or De-identified information does not identify you individually" while mentioning nothing about how the Facebook Pixel does, in fact, identify users individually. ECF No. 21-2, at 3. Elsewhere, the document states "certain Cookies and Similar Technologies do collect Personal information. For example, if you click Remember Me when you log in to our website, a cookie will store your username." *Id*. at 2. These are, at best, incomplete disclosures about the Pixel technology utilized by Defendant.

## III. PLAINTIFF HAS ADEQUATELY PLED "AIDING" LIABILITY

### A. Defendant Can be Liable for Aiding Under Section 632

A party who aids and agrees with a violation of CIPA § 632 is also liable under the statute. *See Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011). Specifically, Cal. Penal Code § 31 allows for aiding and agreeing with liability. *See* Cal. Penal Code § 31 ("All persons

concerned in the commission of a crime … or aid and abet in its commission … are principals in any crime so committed."). This section, when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera*, 791 F. Supp. 2d at 965. "The plain language of the statute does not limit liability to the person who has physically recorded a confidential conversation." *Id.*

Here, Plaintiff alleges that Defendant aided, agreed with, and employed Meta's wiretapping of Plaintiff's communications on Defendant's website. FAC ¶¶ 34, 35, 60. Defendant did so by contracting with Meta for the Facebook Pixel and integrating it into its website. As a result, Meta was able to eavesdrop upon Plaintiff's and Class Members' confidential communications. *Id.* ¶¶ 24-45. Nothing more is required.

Defendant can also be held directly liable under CIPA § 632 even as a party to the communication. "Section 632 makes it illegal to either eavesdrop upon or record confidential communications. The third party doctrine applies to eavesdropping, but not recording." *Turner*, 2024 WL 2750017, at *8 n.4. For instance, *in Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 99 (2006), the defendant's employees in Georgia allegedly recorded their telephone conversations with clients in California without their clients' consent. The California Supreme Court found that the defendant could be liable under section 632 for intentionally recording its conversations with clients involving confidential communications without their consent. As the California Supreme Court held, "the terms of section 632 … do[] not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibits such a party from secretly or surreptitiously recording the conversation." *Id.* at 117; *see also Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 608 (2020) ("[W]e hold that sections 632 and 632.7 prohibit recording a communication, in whole or part, without the consent of all parties, no matter the

particular role or degree of participation that a party has in the communication.”).

Further reinforcing this, another portion of CIPA states:

> Sections 631, 632, 632.5, 632.6, and 632.7 do not prohibit one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion, kidnapping, bribery, any felony involving violence against the person.

Cal. Penal Code § 633.5. In other words, the California Legislature created a limited exception to section 632 for certain types of recordings by parties to the communication (an exception that does not apply here) because they “believed section [632] could apply to parties.” *See Smith v. LoanMe, Inc.*, 483 Cal. 5th 183, 195 (2021) (holding that CIPA § 632.7 applies to parties to the communication as well as non-parties).

These decisions from the California Supreme Court and the text of CIPA make clear that a party to the communication can be held liable for secretly recording a conversation, even if they cannot be held liable for eavesdropping on a conversation. Thus, Plaintiff’s allegations that Defendant allowed Meta to secretly record consumers are sufficient to hold Defendant liable for a violation of section 632. *See* FAC ¶¶ 2, 6, 20, 33, 35-36, 45, 58, 60, 61, 71.

Finally, at the very least, a question of fact exists as to whether Plaintiff had a reasonable expectation that his communications and personally identifiable information would be confined to Defendant. *See Brown*, 685 F. Supp. 3d at 939 (“[T]he question under CIPA is whether, at the time of the conversation, the aggrieved party had a reasonable expectation that it would be confined to the parties thereto. On this question, the Court finds a triable issue exists”) (cleaned up). Accordingly, it would be premature for the Court to make a finding on this issue.

### B. The Complaint Sufficiently Alleges Aiding Liability under Section 631

Defendant argues that Plaintiff fails to state a claim for aiding Meta under § 631(a). MTD at 24-25. That is wrong. Prong four of § 631(a) provides for liability when a person, “by

means of any machine, instrument, contrivance, or in any other manner, … aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." CIPA § 631(a) (emphasis added). Prong four does not require "aiding and abetting" because the word "abet" appears nowhere in CIPA § 631(a).

The California Legislature's use of the terms "aids," "agrees with," and "employs" indicates that CIPA § 631(a) was meant to apply to a much broader swath of non-criminal conduct. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129-30 (S.D. Cal. 2023). Accordingly, "aid" should be interpreted as "to give assistance," "agrees with" as "to concur in opinion or purpose," and "employs" as "to make use of" or "to hire." In short, a defendant violates prong four where it enables another's wrongdoing. *See Revitch*, 2019 WL 5485330, at *2 ("[T]he complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing.").

Here, the FAC is replete with allegations that Meta, as enabled by Defendant, collects the contents of users' communications with the Website. *See* FAC ¶ 6 ("Defendant allowed the Facebook Tracking Pixel on the Website to send that fact that he applied for an American Express credit card contemporaneously to Meta"); *id.* ¶ 24 ("Defendant provides credit card applications on its Website. Defendant has installed the Facebook Tracking Pixel on each webpage used for these applications."); *id.* ¶¶ 26-29 (the Pixel transmits PII to Facebook); *id.* ¶¶ 34, 35. These allegations are sufficient to plead Defendant's violation of prong four of CIPA § 631(a). *See Cousin*, 681 F. Supp. 3d at 1129-30.

## IV. PLAINTIFF'S CLAIMS ARE TIMELY

Lastly, Defendant contends Plaintiff's CIPA claims are untimely under CIPA's one-year statute of limitations because he filed the original complaint on March 20, 2024 and does not

allege when in March, 2023, he used the AmEx website. MTD at 25. Defendant is wrong because Plaintiff was not required to file within one year of that occurrence. "Under California's delayed discovery rule, the statute of limitations does not start to run until the plaintiff discovers, or has reason to discover, the cause of action." *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (same). "To utilize the delayed discovery rule, the plaintiff 'must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Franklin*, 2018 WL 5923450, at *3. These factors can be met where "[t]he very nature of plaintiff's allegations is that the recordings were done surreptitiously." *Id.*

Plaintiff's claims are timely because he alleges Defendant's wiretapping was carried out surreptitiously and without his consent. *See* FAC ¶¶ 2, 6, 20, 33, 35-36, 45, 58, 60, 61, 71. Thus, "[d]rawing all inferences in favor of the [P]laintiff, and [given] that resolution of this question is typically one of fact, … [P]laintiff has alleged sufficient facts to avail himself of California's delayed discovery rule," and Plaintiff's claim is timely. *Franklin*, 2018 WL 5923450, at *3.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the motion to dismiss be denied. If Defendant's motion is granted in any respect, Plaintiff respectfully requests leave to cure any such deficiencies.

Dated: December 11, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *_/s/ Philip L. Fraietta_*
Philip L. Fraietta

Joshua D. Arisohn
Philip L. Fraietta
Alec M. Leslie
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
pfraietta@bursor.com
aleslie@bursor.com

*Attorneys for Plaintiff*