UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIP CAMACHO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

AMERICAN EXPRESS COMPANY,

Defendant.

Case No. 1:24-cv-02408-JPC

**REPLY IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ........................................................................................................................ 1

I. Plaintiff Does Not Establish Aiding-and-Abetting Liability as to American Express. ........................................................................................................................ 1

A. Plaintiff's Interpretation of Section 632 as Authorizing Aiding-and-Abetting Liability Is Contrary to the Statute's Plain Language. ............................ 1

B. Plaintiff Applies the Wrong Standard for Aiding-and-Abetting Liability. ............ 2

II. Plaintiff's Conclusory Allegations Do Not State a Primary CIPA Violation. .................... 3

A. Plaintiff's Assertions About Meta's Intent Are Insufficient. ................................. 3

B. Plaintiff Still Does Not Plead the Elements of a Section 631(a) Violation. ........... 4

1. The Opposition Does Not Identify a Single "Communication" That Was Intercepted, Much Less the "Contents" of a Communication. ........... 4

2. Plaintiff Fails to Show Meta Acted as a Third Party Under Any Valid Test. ........................................................................................................ 5

3. Plaintiff Fails to Meet the "In Transit" Requirement. ................................ 6

C. Plaintiff Still Does Not Plead the Elements of a Section 632 Violation. ................ 7

1. Plaintiff's Vague Assertions Cannot Establish That Meta Eavesdropped or Recorded Any "Confidential" Communications. ........... 7

2. The Meta Pixel Is Not a "Device." .......................................................... 8

D. Plaintiff Fails to Meet His Burden of Demonstrating Lack of Consent. ................ 8

III. Plaintiff Does Not Dispute That He Filed Outside the Limitations Period. ..................... 10

CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)....................4

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....................7

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)....................4

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................3

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024)....................3

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)....................8

*Dos Santos v. Assurant, Inc.*,
625 F. Supp. 3d 121 (S.D.N.Y. 2022)....................9

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024)....................9

*Esparza v. UAG Escondido A1, Inc.*,
2024 WL 3761293 (S.D. Cal. Aug. 5, 2024)....................2, 3

*Franklin v. Ocwen Loan Servicing, LLC*,
2018 WL 5923450 (N.D. Cal. Nov. 13, 2018)....................10

*Gladstone v. Amazon Web Servs., Inc.*,
2024 WL 3276490 (W.D. Wash. July 2, 2024)....................6

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)....................8

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....................2, 7

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
794 F. Supp. 2d 1067 (N.D. Cal. 2011)....................4

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ....................................................................................8

*James v. Contra Costa County*,
2023 WL 4410504 (N.D. Cal. July 7, 2023)...............................................................10

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......................................................................10

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024)...............................................................5

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ..............................................................5

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017)................................................................8

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) ........................................................................................7

*People v. Hudson*,
136 P.3d 168 (Cal. 2006) ...............................................................................................2

*Posadas v. Goodyear Tire & Rubber Co.*,
2024 WL 5114133 (S.D. Cal. Dec. 13, 2024)................................................................5

*Ramos v. The Gap, Inc.*,
2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ..........................................................4, 5

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ...........................................................7

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......................................................................4, 6

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)...................................................................7

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......................................................................7, 9

*In re Veon Ltd. Sec. Litig.*,
2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018)................................................................5

**Statutes**

Cal. Penal Code § 31 .......................................................................................................2

Cal. Penal Code § 631 ........ *passim*

Cal. Penal Code § 632 ........ *passim*

Cal. Penal Code § 637.2 ........ 2

## PRELIMINARY STATEMENT

Plaintiff's opposition makes plain the lack of factual allegations underlying his CIPA claims. Plaintiff still does not establish that American Express had the requisite knowledge for aiding-and-abetting liability. He still does not identify a single "communication" that was intercepted, much less the "contents" of a "confidential" communication. He still does not point to any allegations indicating that Meta intended to collect his sensitive information when it repeatedly stated the opposite. He still does not show that Meta acted, or even had the capability to act, for a purpose other than on American Express's behalf. He still does not explain how his communications were intercepted "in transit," or show a lack of consent. And he certainly does not plead anything supporting application of the "delayed discovery rule" to his untimely claim.

Plaintiff brushes off these deficiencies as "minute detail," but they each go directly to core requirements of his claims. Indeed, plaintiff's theory and barebones allegations, if credited, would threaten to unwittingly expose large swaths of the internet to criminal wiretap liability. Plaintiff had an opportunity to amend his complaint once, and his claims only became weaker. His opposition neither requests an opportunity to amend again nor demonstrates that another amendment would be anything but futile. This action thus should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiff Does Not Establish Aiding-and-Abetting Liability as to American Express.

#### A. Plaintiff's Interpretation of Section 632 as Authorizing Aiding-and-Abetting Liability Is Contrary to the Statute's Plain Language.

Plaintiff's argument that Section 632 authorizes aiding-and-abetting liability is contrary to fundamental rules of statutory construction. While California's legislature included an aiding-and-abetting provision in Section 631(a), covering anyone "who aids, agrees with, employs, or conspires" with a primary violator, it did not include a similar provision in Section 632. Indeed,

plaintiff's interpretation would make the aiding-and-abetting provision in Section 631(a) mere surplusage. But as the Supreme Court of California has "stressed in the past, interpretations that render statutory terms meaningless as surplusage are to be avoided." *People v. Hudson*, 136 P.3d 168, 172–73 (Cal. 2006). Neither plaintiff nor the single case he cites from 2011 meaningfully engages with this point. Plaintiff relies on Cal. Penal Code § 31, which governs the scope of potential *criminal* violations, but ignores Cal. Penal Code § 637.2, which makes clear that *civil actions* may be brought only "against the person who committed the violation."

As a fallback, plaintiff argues that American Express "can also be held directly liable" under Section 632, but the Complaint does not plead direct liability. Instead, the Complaint asserts that American Express "aided, employed, agreed, and conspired with Meta" and that "*Facebook* intentionally used its Business Tools to eavesdrop upon and record the confidential communications." AC ¶¶ 2, 68 (emphasis added). Moreover, there is no basis for direct liability here, including because a credit card applicant would reasonably expect their application to be recorded by the party to whom it is submitted. *See In re Google Inc.*, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) (plaintiffs could not reasonably expect emails not to be recorded because emails "are by their very nature recorded on the computer of at least the recipient").

**B. Plaintiff Applies the Wrong Standard for Aiding-and-Abetting Liability.**

Plaintiff attempts to salvage his aiding-and-abetting claim by inventing a lower standard than that required under the law. Plaintiff's theory that he need only allege that American Express has "enable[d] another's wrongdoing" because "the word 'abet' appears nowhere" in Section 631 has been rejected. *Esparza v. UAG Escondido A1, Inc.*, 2024 WL 3761293, at *2 (S.D. Cal. Aug. 5, 2024) ("[T]he absence of the word 'abet' does not negate any requirement of knowledge or intent under [Section 631]"). Indeed, many courts "have interpreted clause four [of Section 631] as an 'aiding and abetting' provision" and applied the common law standard

governing such conduct. *Id.* (collecting cases and distinguishing *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023)). Under this standard, plaintiff must plausibly allege that American Express knew that Meta was intentionally intercepting the contents of his communications and that Meta was doing so for its own use. Motion to Dismiss ("Mot.") 24.

The Complaint falls far short of this standard. *Id.* at 24–25. Plaintiff's opposition does not argue otherwise. Instead, plaintiff's "allegations simply restate that" American Express "deployed" the Meta Pixel "feature onto its website," but this is not enough to state a claim for aiding and abetting. *Esparza*, 2024 WL 3761293, at *3. And plaintiff still fails to allege anything about how American Express configured the Pixel, including whether LDU was enabled, which would prevent Meta from collecting data for its own purpose. Mot. 25.

## II. Plaintiff's Conclusory Allegations Do Not State a Primary CIPA Violation.

Plaintiff's claims also fail because he has not alleged a CIPA violation by Meta, and American Express cannot be liable for aiding and abetting a CIPA violation that did not occur.

### A. Plaintiff's Assertions About Meta's Intent Are Insufficient.

To plead intent, plaintiff must allege more than mere awareness that an interception might occur. Rather, plaintiff must plausibly allege that Meta had the purpose to record the communication at issue or substantial certainty that it would be recorded. Mot. 9.

Plaintiff's opposition confirms that the Complaint does not meet this standard. Plaintiff asserts that Meta designed the Pixel "for the express purpose of collecting individual user data from the websites." Plaintiff's Opposition ("Opp.") 1. But he does not allege that Meta intended to collect the information purportedly captured here: "the fact that he applied for an American Express credit card." AC ¶ 6. Nor does he allege Meta was even aware the Pixel was being used to capture this type of information. The mere allegation that Meta offered software code that websites could use to analyze user activity is insufficient. *See Doe I v. Google LLC*, 2024 WL

3490744, at *1 (N.D. Cal. July 22, 2024) (plaintiffs failed to plead intent where defendant "offers the source code … 'in a copy-and-paste format' for website developers to deploy to analyze users' activities online"). Similarly, plaintiff's allegation that Meta "generates revenues" based on data from Pixels says nothing about Meta's intent to intercept plaintiff's communications with American Express. *See id.* at *2 (failure to plead intent despite similar allegations).

"Meta's express desire not to receive [sensitive] data from its business partners" reinforces the weakness of plaintiff's allegations. *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024); AC ¶ 43. Plaintiff cites *Doe v. Meta Platforms, Inc.*, but that court relied on allegations in the complaint that "prevent[ing] receipt of sensitive health information" was "not what Meta *really* intend[ed]" and allegations that the Pixels' "tools and filters [we]re not effective" and "not fully implemented" to filter out allegedly intercepted data. 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023). No similar allegations are pleaded here.[1]

### B. Plaintiff Still Does Not Plead the Elements of a Section 631(a) Violation.

#### 1. The Opposition Does Not Identify a Single "Communication" That Was Intercepted, Much Less the "Contents" of a Communication.

Plaintiff asserts that the Pixel intercepts "personally identifiable information from Facebook cookies" and unspecified "event data," which "includes the fact that [a] user applied for an American Express card." Opp. 4. But these vague assertions fail to allege "with any level of specificity" plaintiff's communications to American Express. *Ramos v. The Gap, Inc.*, 2024 WL 4351868, at *4–5 (N.D. Cal. Sept. 30, 2024). Nor does plaintiff show how information from

[1] Plaintiff's other authority is inapposite. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1059 (N.D. Cal. 2015) (plaintiffs *failed* to plead manufacturers' intent while assuming developer's intent without analysis); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 512–13 (C.D. Cal. 2021) (finding "intentional act" for personal jurisdiction, which has a "specialized meaning"); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1082 (N.D. Cal. 2011) (no argument on intent where defendant "created … and installed specially-designed software and technology" to intercept data from Wi-Fi networks).

cookies or "the fact of applying" for a credit card constitutes a "communication" or "singular conversation or exchange." *Libman v. Apple, Inc*., 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024). Instead of explaining what the "communication" at issue is, plaintiff "just gestures generally toward[s] the complaint." *Ramos*, 2024 WL 4351868, at *5. His claim therefore should be dismissed. *Id.*

Plaintiff also fails to allege that the Pixel intercepted the "contents" of any communications. Without information about what of his information was purportedly shared via the Pixel, "the Court cannot determine whether the information [collected] constitutes 'contents' for purposes of a CIPA violation." *Posadas v. Goodyear Tire & Rubber Co.*, 2024 WL 5114133, at *5 (S.D. Cal. Dec. 13, 2024). And neither American Express "nor the Court should have to guess about such a fundamental piece of Plaintiff's case." *Ramos*, 2024 WL 4351868, at *5.

Moreover, none of the categories of information cited in plaintiff's opposition are "contents." The "event data" plaintiff contends that Pixels generally collect reflects only how users "engaged" with a website "feature," which is quintessential "record information." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558, at *8 (S.D. Cal. Sept. 30, 2024). A Facebook ID likewise is not content, even when combined with event data. Mot. 14.[2]

**2. Plaintiff Fails to Show Meta Acted as a Third Party Under Any Valid Test.**

Plaintiff does not dispute his claims should be dismissed if he cannot sufficiently allege an interception by a third party. Plaintiff argues Meta is a third party under three potential tests, but the first test lacks a legal basis, and his allegations fail under the second and third tests.

[2] Plaintiff also mentions "text typed into text boxes or fields," but plaintiff deleted from the Amended Complaint the false claim that the Pixel on American Express's website captured form field information typed into the website. *Compare* AC ¶ 6, *with* ECF No. 1 ¶ 6. Plaintiff cannot revive prior allegations and "interpose new factual allegations ... in opposing a [second] motion to dismiss." *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *19 (S.D.N.Y. Aug. 30, 2018).

Plaintiff first argues for a "separate entity" test, under which any software provider is considered a third party if it is a separate legal entity, but the cases he cites do not support this. Those cases merely noted a software provider's separate legal status in passing, and none held that such status categorically makes a software provider a third party under CIPA. *See, e.g.*, *Saleh*, 562 F. Supp. 3d at 520 (noting that, unlike defendants in other cases, the defendant was "a separate legal entity that offers 'software-as-a-service' and not merely a passive device"). Other authority plaintiff cites discussed a "separate entity" approach but rejected it. *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *6–7 (W.D. Wash. July 2, 2024).

Plaintiff next argues under the "capability" and "extension" tests, but his allegations are insufficient under either test. Plaintiff fails to plead that Meta was capable of using plaintiff's communications for its own benefit, much less that Meta was acting as anything other than an extension of American Express. Mot. 15–16. Underscoring this, plaintiff admits he has not alleged how the Pixel was configured on American Express's website, and he is notably silent regarding whether LDU mode was enabled. When LDU is enabled, Meta is *incapable* of using data it collected for its own benefit and can act only as an *extension* of American Express as to that data. *Id.* Plaintiff's failure to allege any facts about this critical question render his allegations too vague and his claim too speculative regardless of which test applies. *Id.*

**3. Plaintiff Fails to Meet the "In Transit" Requirement.**

As explained in American Express's opening brief, the Complaint lacks at least two facts critical to the "in transit" requirement: (i) how *plaintiff's communication* was directed and (ii) *when* Meta purportedly read that communication. Without these facts, plaintiff cannot state a claim; conclusory assertions that the Pixel sent the fact he applied for a credit card "contemporaneously" and general assertions about how Pixels typically send a "GET request" do not change that. Opp. 11–12; Mot. 16–17.

Plaintiff cannot avoid this by reading "in transit" out of the statute. Plaintiff's argument that he need only plead the allegedly intercepted communications were "sent from, or received at, a place within" California has been rejected by multiple courts. *E.g.*, *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024) ("Plaintiff cannot avoid the ["in transit"] requirement merely because she sends or receives a message in California."); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (same).

**C. Plaintiff Still Does Not Plead the Elements of a Section 632 Violation.**

**1. Plaintiff's Vague Assertions Cannot Establish That Meta Eavesdropped or Recorded Any "Confidential" Communications.**

Plaintiff does not identify any "confidential communication" that was eavesdropped upon or recorded. Plaintiff's opposition asserts that Meta "intercepted personally identifiable information," but he does not explain what "personally identifiable information" he is referring to, much less demonstrate that it amounts to a "confidential communication." Opp. 13. To the extent plaintiff's claim is based on his Facebook ID information and/or unspecified "events," that does not satisfy the "confidential communication" standard under Section 632. *See Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *5 (W.D. Wash. Dec. 21, 2023) ("[K]eyword search terms, URLs, and unique user identifiers and cookies" not sufficiently private to establish a claim under Section 632); *see also People v. Drennan*, 84 Cal. App. 4th 1349, 1356 (2000) (Section 632 does not protect "non-content-based conduct coincident to the communication").[3]

---

[3] This is true whether or not the Court applies the presumption that online communications are not confidential under CIPA. Mot. 18–20. This presumption is based on multiple "decisions from the California appellate courts" that "internet-based communication[s] cannot be confidential," as that term is used under CIPA. *Google*, 2013 WL 5423918, at *22. Many federal courts have recognized and applied this presumption to CIPA claims. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 n.35 (N.D. Cal. 2023) (collecting cases).

### 2. The Meta Pixel Is Not a "Device."

Software is not a device under Section 632. The plain meaning of the term "device" implies "equipment," so "a piece of code," AC ¶ 20, like the Meta Pixel, cannot be a "device" within "the meaning of CIPA because [it is] not 'equipment.'" *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023). Nor is it "a thing made or adapted for [the] particular purpose" of eavesdropping or recording confidential communications. *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017).

Plaintiff argues that American Express's authority arose under CIPA Section 632.7, Opp. 15, yet he and his cases ignore *Doe v. Microsoft Corp.*, which held that software is not a device under *Section 632*. *Doe*, 2023 WL 8780879, at *8. Indeed, plaintiff's primary authority, which pre-dates *Microsoft*, ruled that software can be a device in part because the court had not found any "contrary authority under Section 632(a)." *Doe*, 690 F. Supp. 3d at 1080. And plaintiff's authority is based on a decision interpreting the Wiretap Act's definition of "device," which uses different language than CIPA. Mot. 21 n.14. Plaintiff's interpretation of "device" is at odds with the natural reading of the term and the rule of lenity and should be rejected. *Id.* at 20–21.

### D. Plaintiff Fails to Meet His Burden of Demonstrating Lack of Consent.

Contrary to plaintiff's assertions, "under California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record" because lack of consent is an explicit statutory requirement. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020); *see* Cal. Penal Code §§ 631(a) (requiring that wiretapping occur "without the consent of all parties to the communication"), 632(a) (similar).[4]

[4] Plaintiff cites *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023) to argue that consent is an affirmative defense, but that case involved enforcement of an arbitration clause, not CIPA. Plaintiff also cites two cases to argue that his conclusory assertion that he did not consent is

Plaintiff's attempts to avoid the fact that he consented to American Express's Terms and Conditions and Privacy Statement should be rejected. As explained in American Express's opening brief, the Court can consider these terms on three independent grounds: (1) plaintiff changed his statement of the facts to respond to American Express's motion to dismiss and thus contradicted allegations in his original pleading; (2) the terms are integral to the Complaint; and (3) the terms are subject to judicial notice. Mot. 5 n.8–9. As to the first ground, plaintiff argues that American Express's reference to the admission of consent in his original complaint is improper, but many courts have rejected that argument. *E.g.*, *Dos Santos v. Assurant, Inc.*, 625 F. Supp. 3d 121, 131–32 (S.D.N.Y. 2022) (collecting cases). Plaintiff does not address the second ground, which alone justifies considering these terms. Opp. 17–19. And while plaintiff claims the terms are not subject to judicial notice, he fails to point to any reasonable basis to question their accuracy.

Plaintiff's effort to create inconsistency and confusion in the disclosures he agreed to are likewise unavailing. Plaintiff completely ignores the Terms and Conditions, which expressly permit American Express to "share information we have about you at any time for marketing and administrative purposes as permitted by law." Ex. 1. As for the Privacy Statement, there is nothing inconsistent or confusing about, on the one hand, disclosures that "Aggregated Information or De-identified Information does not identify you" while "certain Cookies and Similar Technologies do collect Personal information," and on the other hand, the agreement that

---

sufficient, but unlike here, the plaintiffs in those cases did not admit that they expressly consented to the defendant's terms and conditions. *See Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 941 (S.D. Cal. 2024) (arguing implied consent based on "the nature of the communication" allegedly intercepted); *Valenzuela*, 674 F. Supp. 3d at 757 (distinguishing cases "in which the plaintiff consented under CIPA by expressly agreeing to a privacy policy").

American Express may collect information "through Cookies and Similar Technologies," including "pixels." Ex. 2; Mot. 22–23.

Plaintiff also incorrectly argues that American Express "fails to show" that "notice and assent was procured prior to the wiretapping, rather than after-the-fact." Opp. 20. Plaintiff admitted that he was "required to agree to Defendant's Terms and Conditions *before* submitting a credit card application." ECF No. 1, ¶ 29 (emphasis added). Because he asserts that Meta intercepted "the fact that he applied for an American Express credit card," AC ¶ 6, he necessarily consented before the claimed interception.

## III. Plaintiff Does Not Dispute That He Filed Outside the Limitations Period.

Plaintiff does not dispute his claim was filed outside CIPA's one-year statute of limitations period. Instead, he now asks the Court to excuse his untimeliness under the "delayed discovery rule." Opp. 24–25. But plaintiff does not satisfy the standard he articulates. For example, he pleads neither "the time and manner of [his] discovery" of the alleged violation nor his "inability to have made earlier discovery despite reasonable diligence." *Id.* at 25; *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018). Because the Amended Complaint "does not contain any factual allegations in support of delayed discovery," and American Express disclosed use of the Pixel, plaintiff's CIPA claims should be dismissed. *James v. Contra Costa County*, 2023 WL 4410504, at *2 (N.D. Cal. July 7, 2023); *see Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 903 (N.D. Cal. 2023) (delayed discovery rule did not apply to CIPA claims where defendant's privacy policy "disclose[d] that it 'may use third party vendors to assist' with 'monitoring and analyzing Site activity'").

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

New York, New York
Dated: January 8, 2025

COVINGTON & BURLING LLP

*/s/ Kathryn E. Cahoy*

Kathryn E. Cahoy
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Tel: 650-632-4700
kcahoy@cov.com

Jordan S. Joachim
The New York Times Building
620 8th Avenue
New York, New York 10018
Tel: 212-841-1000
jjoachim@cov.com

*Attorneys for Defendant American Express Travel Related Services Company, Inc.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Memorandum of Law complies with the length restrictions in Local Civil Rule 7.1(c) and the Court's Individual Rule of Practice 2(B) because it contains 3,362 words, excluding the caption, indices, table of contents, table of authorities, signature blocks, and required certificates, as counted by the Microsoft Word-processing program used to prepare this document.

*/s/ Kathryn E. Cahoy*
Kathryn E. Cahoy